Marshall, C. J.
 

 This is an error proceeding from tbe Public Utilities Commission, which is closely related to and in large measure based upon, a former error proceeding prosecuted to this court from the Utilities Commission, being cause No. 17558,
 
 Ohio Mining Co.
 
 v.
 
 Public Utilities Commission,
 
 106 Ohio St., 138, 140 N. E., 143. It was sought in that ease, as it is in the present case, to declare the property of the Southern Ohio Power Company as being dedicated to. public utility service, and to compel that company to file a schedule of its rates and charges. The pertinent and salient fact before the commission and the court in the former proceeding was that the Southern Ohio Power Company was a stockholder and the owner of all of the stock, except the necessary number of shares to qualify a board of directors, of the Hooking Power Company of Nelsonville, and the Athens Electric Company of Athens. The Ohio Mining Company was at that time and still is purchasing electric energy from one of the subsidiary companies, and, inasmuch as the electric energy distributed by both of the subsidiary companies is generated at the plant of the Southern Ohio Power Company at Floodwood, and sold to the subsidiary companies, the Ohio Mining Company demands that the source of the power be made subject to regulation. In the former decision this court declared that the ownership by one corporation of the capital stock in the other corporations
 
 *248
 
 constituted the business of such corporations a single enterprise, and that therefore the holding corporation would be subject to public utility regulation. After that decision was rendered the Southern Ohio Power Company did not file a schedule with the Commission, and thereupon a further inquiry was made by the Commission, and an administrative order made that said company publish and file its schedules of rates and charges. As a defense to that inquiry and as a ground of error thereto, it is shown that after the former decision of this court the stock theretofore held by the Southern Ohio Power Company in the other corporations was sold and delivered to the individuals who were then the stockholders of the Southern Ohio Power Company, and that at this time the Southern Ohio Power Company as a corporation does not own any stock in either of the distributing companies. It further appears by the record that some of the individuals who own stock in the Southern Ohio' Power Company own no stock in either of the other companies, and that, except for the unified stock holdings found to exist in .the former case, none of the plant, equipment or other property of the Southern Ohio Power Company could be deemed dedicated to public utility service, nor was it in fact even devoted to or employed in such service.
 

 .The former decision of this court recognized the power of the Public Utilities Commission to remedy unjust and unreasonable charges, and unequivocally declared that the Commission is not limited in its inquiry by reason of the electric energy being purchased instead of being manufactured, and
 
 *249
 
 that the Commission should not be bound by the contract price of such purchase, but may properly inquire whether the price paid is a reasonable one.
 

 The only question remaining for determination is whether or not the Southern Ohio Power Company under the conditions of ownership of stock of the Hocking Power Company and the Athens Electric Company, as they now exist, and the manner of sale of electric energy by the Southern Ohio Power Company to the other companies, is now a public utility and therefore required to file its schedules and thereby submit to a determination of the reasonableness of its rates and charges. The elements of a public utility in Ohio are defined by Section 614-2, General Code, from which we quote in part as follows:
 

 “Any person or persons, firm or firms, copartnership or voluntary association, joint stock association, company or corporation, wherever organized or incorporated * * * when engaged in the business of supplying electricity for light, heat or power purposes to consumers within this state, is an electric light company.”
 

 It is conceded that the Southern Ohio Power Company does not sell its product to any persons or firms other than the other two companies, and it is further conceded that neither of those companies utilizes electric energy for any purpose other than resale at a profit. The Southern Ohio Power Company claims and the Ohio Mining Company does not deny that it has never exercised the right of eminent domain; that it has not at any time received any public franchise; and that it has never held itself out to the public as willing to
 
 *250
 
 serve the public generally; and that it never intended to nor did it in fact dedicate its property to public utility service, except by a presumptive dedication attributable to the fact that it owned stock in the two subsidiary companies which furnished current directly to their consumers. As to what steps would be necessary to withdraw property from the public use after once being dedicated to the public service we need not inquire, nor from the meager disclosure of facts appearing in this record, in any event, are we able to decide whether Sections 504-2 and 504-3, General Code (known as the Miller Act), would apply.
 

 Having reached the conclusion, as to the Southern Ohio Power Company, under its present status as disclosed by this record, and under the relationship now shown to exist between it and the Hocking Power Company and the Athens Electric Company, that it is not a public utility and that it is not in fact furnishing its product to consumers within this state, it could not legally have recourse to the provisions of that act.
 

 In
 
 Ohio Mining Co.
 
 v.
 
 Public Utilities Commission, supra,
 
 the fact was stated:
 

 “The Southern Ohio Power Company, as such, has never qualified as a public utility and disposes of its entire output of electric energy by private contract to the Athens Electric Company and the Hocking Power Company.”
 

 This fact existed then and is conceded now. The former adjudication of this court should be applied to the facts then existing, under which this court held the power company as a public utility solely because of the fact of its stockholding in electric
 
 *251
 
 companies actually and directly furnishing current to the public. Whatever dedication was made arose simply from the fact of a unified stockholding in the subsidiary companies. The divorcement of the power company’s activities would still leave the two subsidiary companies as public utilities subject to the control of the state Commission. Since the dedication by the power company was unintentional, but so decreed by this court simply because of the adventitious circumstance of stock control, we think that a divestment of such stock control by the power company under the facts as they now exist, would deprive the power company of its public utility character and leave the two subsidiary companies, as they were intended to be, public utilities within the terms of the statute.
 

 The elements of a dedication of property to public utility service have never been defined by this court, but that matter has received judicial determination at the hands of other courts.
 

 In the case of
 
 Allen
 
 v.
 
 R. R. Commission, 179
 
 Cal. 68, 175 Pac. 466, 8 A. L. R. 249, the following propositions of law are declared:
 

 “A
 
 private water company may be organized to sell water for purposes of private gain and not in so doing become a public utility; and a company having a single and undivided supply of water may devote its properties and a part of those waters to public service and may retain a part for the advantages of private sale, and not become a public service corporation as to all by virtue of the dedication of a part.
 
 * * *
 
 Dedication of property to public use is never presumed without evidence of unequivocal intention.
 

 
 *252
 
 “To constitute a public utility the devotion to public use must be of such character that the public generally, or that part of it -which has. been served and which has accepted the service, has the right to demand that that service shall be conducted, so long as it is continued, with reasonable efficiency under reasonable charges. Public use means the use by the public and by every individual member of it, as a legal right.
 

 “Our Constitution and our statutory definitions of public utilities must be construed as applying only to such properties as have in fact been devoted to a public use, and not as an effort to impress with a public use properties which have not been devoted thereto.”
 

 A writ of
 
 certiorari
 
 was sought from this decision to the Supreme Court of the United States and denied. 249 U. S. 601, 39 Sup. Ct. 259, 63 L. Ed. 797. There are other questions in the case. It cannot therefore be authoritatively stated that the writ was denied on this particular proposition.
 

 In the case of
 
 Producers’ Transportation Co.
 
 v.
 
 R. R. Comm. of
 
 California, 251 U. S. 228, 40 Sup. Ct. 131, 64 L. Ed. 239, the same principle was discussed, and the following declaration made:
 

 “It is, of course, true that if the pipe line was constructed solely to carry oil for particular producers under strictly private contracts and never was devoted by its owner to public use, that is, to carrying for the public, the state could not, by mere legislative fiat or by any regulating order of a commission, convert it into a public utility or make its owner a common carrier; for that would be taking private property for public use without
 
 *253
 
 just ■compensation, which no state can do consistently with the due process of law clause of the Fourteenth Amendment.”
 

 Several former decisions of the court were cited in support of this principle, and in that case the corporation was declared to be a public utility on and after a certain date by reason of the company having exercised' the right of eminent domain and by reason of having made contracts and transportation agreements which clearly indicated an intention to carry oil for all producers seeking its service. It is clear therefore that the employment of
 
 quasi
 
 public powers and the exercise of
 
 quasi
 
 public functions become a cogent test of dedication to public service.
 

 The most recent case which has been called to our attention is that of
 
 Wolff Packing Co.
 
 v.
 
 Court of Industrial Relations of Kansas,
 
 decided by the Supreme Court of the United States June 11, 1923, 262 U. S. 522, 43 Sup. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280, Public Utilities Reports, 1923D, page 747; and, without quoting at length from the opinion in that case, it may be stated that on page 536 of the opinion in 262 U. S. (43 Sup. Ct. 633) the discussion is in full harmony with the principles already stated.
 

 It is urged by counsel for the Southern Ohio Power Company, in argument, that it could not be declared to be a public utility because of being organized under the laws of the state of Maine and that a foreign corporation is not permitted under the laws of the state of Ohio to do business as a public utility. We find no authority for this claim, but, on the contrary, it is very clear by the express
 
 *254
 
 provisions of the General Code of Ohio, which will be found hereinbefore quoted, that the public utility laws apply to any “corporation wherever organized or incorporated.”
 

 We have therefore reached the conclusion that upon the undisputed facts as they now appear in this record the Southern Ohio Power Company is not now a public utility, and that the Commission erred in ordering it to file a schedule of rates and charges.
 

 Order reversed.
 

 Jones, Day and Arlen, JJ., concur.
 

 Robinson and Matthias, JJ., dissent.
 

 Wanamaker, J., not participating.