•ALLEN, Chief Judge.
This is an appeal from an order of the Circuit Court of St. Lucie County, holding that the City of Fort Pierce, a municipal corporation, did not have to submit to a referendum before the issuance of revenue certificates to establish a gas distribution system in said city.
A complaint was filed by the appellant, plaintiff below, to require the defendant city to show by what authority and from what funds the promotional expenses for the proposed gas utility have been paid and to account for the same; that the city and its officers be restricted and enjoined from issuing, selling, pledging or otherwise disposing of any revenue certificates to be issued for the operation and installation of a municipal gas system; and that the defendant city be enjoined from any of the acts complained of until they have fulfilled the requirements of Section 144 of the present Charter of the City of Fort Pierce, Florida.
An answer was filed by the city denying that Section 144 of the Charter was applicable and alleging that the city was proceeding under Section 141 of the charter. *584 .The city further stated in its answer that it had entered into a contract with the Houston Texas Gas and Oil Corporation to furnish natural gas on an uninterrupted basis to the inhabitants of the city and admitted in said answer that revenue certificates would be issued by the city to establish such a public utility.
The case was tried before the lower court on the complaint, answer and oral testimony. The two sections of the city charter involved in this case are as follows :
“Section 141. Light, heat and power.
“The city commission shall have power to provide for lighting the streets, parks and public buildings of the city; and to establish, maintain and operate plants either within or without the corporate limits of the city for lighting and heating by electricity, gas, or any other method; and to supply the inhabitants of said city with artificial light, heat and power for domestic, business and other purposes, and to charge and collect reasonable rates, prices and compensation for furnishings and supplying the same.”
“Section 144. Other utilities.
“The city commission shall have the power to provide for such other public utilities as they may see fit including municipal ice plant, gas plant, slaughter houses, cold storage plants, public markets, telephone and transportation systems, sewage collection systems and sewage disposal plants. They may construct, maintain, and operate any of such public utilities, provided, however, that in the event that there is at the time of the establishment such a utility in private hands operating in the city which would be in competition thereof, the city commission before establishing such a public utility shall submit the question of such establishment by the city to the qualified electors of the city at a general election of the city or special election called by the said city commission.”
The circuit judge held that the city had the right to supply the inhabitants of the City of Fort Pierce with natural gas under Section 141 of the Chapter 57-1331, Laws of 1957, and that no referendum was required.
We concur in the decision of the lower court since there is ample authority under Section 141 for the city’s action. Section 144, above set forth, requires a referendum where an attempt is made to provide for public utilities by the city where there is already in operation other public utilities of the same type which would be in competition with the newly established city public utility. Under the wording of Section 144, it is noted that the city commission shall have power to provide for public utilities, including various named public utilities, then the following sentence appears:
“ * * * They may construct, maintain, and operate any of such public utilities, provided, however, that in the event that there is at the time of the establishment such a utility in private hands * * * the city commission before establishing such a public utility shall submit the question of such establishment by the city to the qualified electors of the city * * *.”
It is plain that where the words “such a utility” is used that it is referring to public utilities mentioned in the preceding sentence.
The testimony adduced before the circuit judge was uncontradicted that the local dealers of artificial gas were private businesses and none of such dealers were operating a public utility for the distribution of gas.
In the case of Southern Ohio Power Co. v. Public Utilities Commission, 1924, 110 Ohio St. 246, 143 N.E. 700, 34 *585 A.L.R. 171, a public utility was defined as follows:
“To constitute a ‘public utility,’ the devotion to public use must be of such character that the product and service is available to the public generally and indiscriminately, or there must be the acceptance by the utility of public franchises or calling to its aid the police power of the state.”
In State Public Utilities Commission ex rel. v. Bethany Mut. Telephone Ass’n, 1915, 270 Ill. 183, 110 N.E. 334, 335, it is stated:
“To constitute a public use all persons must have an equal right to the use, and it must be in common, upon the same terms, however few the number who avail themselves of it. It is not essential to a public use that its benefits should be received by the whole public, or even a large part of it, but they must not be confined to specified, privileged persons. People ex rel. v. Ricketts, 248 Ill. 428, 94 N.E. 71.
“The words ‘public use’ mean of or belonging to the people at large, open to all the people to the extent that its capacity may admit of the public use. State Public Utilities Commission v. Monarch Refrigerating Co., 267 Ill. 528, 108 N.E. 716. The use must concern the public as distinguished from an individual or any particular number of individuals, but the use and enjoyment of the utility need not extend to the whole public or any political subdivision. It may be confined to a particular district and still be public. State Public Utilities Commission ex rel. v. Noble Mutual Telephone Co., 268 Ill. 411, 109 N.E. 298.
“ * * * Aside from the statutory definition, the term ‘public utility’ implies a public use, carrying with it the duty to serve the public and treat all persons alike, without discrimination, and it precludes the idea of service which is private in its nature, whether for the benefit and advantage of a few or of many. * * * ”
Finding no error, we affirm the lower court.
Affirmed.
KANNER and SHANNON, JJ., concur.