171 So.2d 199 (1965)
VILLAGE OF VIRGINIA GARDENS, a Municipal corporation, Appellant,
v.
The CITY OF MIAMI SPRINGS, a Municipal corporation, Appellee.
No. 64-430.
District Court of Appeal of Florida. Third District.
January 26, 1965.
Rehearing Denied February 16, 1965.
*200 James T. Gordon, Miami, for appellant.
W.J. Huffman, Miami Springs, Scott, McCarthy, Preston & Steel and Phillip Goldman, Miami, for appellee.
Before BARKDULL, C.J., and TILLMAN PEARSON and CARROLL, JJ.
TILLMAN PEARSON, Judge.
The appellant and the appellee are cities in Dade County. The appellant, Village of Virginia Gardens, owns its water distribution system but buys its water from the appellee, City of Miami Springs. In 1950 the two cities entered into a contract whereby the appellee agreed to supply the water at a basic rate of 25 cents per 1,000 gallons, but the contract provided that it could be terminated by either party upon giving 60 days' notice. In 1959 the appellee, Miami Springs, increased the rate so that the price charged its municipal customer, Virginia Gardens, was the same as that charged its individual customers.
The appellant, Virginia Gardens, brought its complaint in chancery against the appellee, Miami Springs, in February 1964. The complaint set forth the contract and alleged that the rate now charged is exorbitant, confiscatory and unreasonable and prayed for a declaratory decree as to (1) what governmental agency, if any, should assume jurisdiction of the dispute; (2) in the alternative, that the chancellor determine a reasonable rate or the reasonableness of the rate being charged, and grant the plaintiff a judgment for the amount of the excessive charges since 1959. The complaint was dismissed and this appeal followed.
The Village of Virginia Gardens urges that the chancellor had jurisdiction of the controversy and should have determined it. Appellant relies upon § 167.57 Fla. Stat. F.S.A. which is as follows:
"The corporate authorities of any city, town or village, now or hereafter incorporated under any general or special law of this state, in which any individual, company or corporation has been, or may hereafter be, authorized by such city, town or village to supply water to such city, town or village and the inhabitants thereof, may prescribe by ordinance maximum rates and charges for the supply of water furnished by such individual, company or corporation to such city, town or village and the inhabitants thereof, such charges to be just and reasonable; provided, that this section shall not be construed as to impair the validity of any valid contract heretofore entered into between any city, town or village and any person, firm or corporation for the supply of water to such city, town or village or its inhabitants, but this section shall not be held to validate any contract heretofore made."
This section is a grant of legislative power to municipalities and by its terms applies only to the power of the city to set the maximum rate to be charged within the city to the residents thereof. It has no relation to the relief prayed for by the appellant.
By statute (Chapter 367 Fla. Stat.) the State of Florida has delegated to the Florida Public Utilities Commission the legislative right to determine rates to be charged by a public utility supplying water. However, such a public utility as defined by § 367.02(7) Fla. Stat., F.S.A. does not include a utility owned or operated by an incorporated city.
The common law requires that a public utility should supply its customers at reasonable rates. City of Tampa v. Tampa Waterworks Co., 45 Fla. 600, 34 So. 631 (1903). A public utility may fix its own rates so long as the rates are reasonable *201 and not discriminatory and not otherwise provided by law. Miami Bridge Co. v. Miami Beach Ry., 152 Fla. 458, 12 So.2d 438 (1943); Tampa Electric Co. v. Cooper, 153 Fla. 81, 14 So.2d 388 (1943). A court of equity may determine if a rate set by a public utility is reasonable and strike down an unreasonable rate but it may not fix rates. Miami Bridge Co. v. Miami Beach Ry., supra; Cooper v. Tampa Electric Co., 154 Fla. 410, 17 So.2d 785 (1944).
We thus reach the question of whether the defendant city is acting as a public utility in supplying water to the plaintiff city for distribution by the plaintiff city to its residents. We think that this question must be answered adversely to the appellant under authority of the definition of a public utility set forth in Higgs v. City of Fort Pierce, Fla.App. 1960, 118 So.2d 582. The court in the Higgs case adopted the definition of a public utility set forth in Southern Ohio Power Co. v. Public Utilities Commission, 1924, 110 Ohio St. 246, 143 N.E. 700, 34 A.L.R. 171:
"To constitute a `public utility,' the devotion to public use must be of such character that the product and service is available to the public generally and indiscriminately, or there must be the acceptance by the utility of public franchises or calling to its aid the police power of the state." 118 So.2d at 585.
The Supreme Court of Colorado was called upon to decide a question similar to the one presented here in City of Englewood v. City & County of Denver, 123 Colo. 290, 229 P.2d 667 (1951). The City & County of Denver purchased a water system from a private owner. The public utility at the time of purchase also supplied the City of Englewood. Denver increased the rate charged the residents of Englewood and Englewood sought an injunction and other relief. The Supreme Court held that Denver was not under a public duty to furnish water to Englewood and therefore was not subject to regulation. In so holding it was found necessary to define a public utility and determine whether or not Denver was acting as a public utility. The court held:
"We find little need to enter into a lengthy discussion of what is or what is not a public utility, because we would ultimately apply the almost universally accepted test, which summarized is, that to fall into the class of a public utility, a business or enterprise must be impressed with a public interest and that those engaged in the conduct thereof must hold themselves out as serving or ready to serve all members of the public, who may require it, to the extent of their capacity. The nature of the service must be such that all members of the public have an enforceable right to demand it." 229 P.2d at 672.
We think that the application of the tests referred to above requires the determination here that the City of Miami Springs is not acting as a public utility in supplying water to the Village of Virginia Gardens for distribution by Virginia Gardens to its residents.
Accordingly, having reached the above conclusion, it follows that the chancellor was confronted with a complaint which alleged a mere supply contract to which the law of private contract should be applied. The complaint does not ask that the contract be construed nor does the plaintiff allege sufficient facts to entitle it to declaratory relief based upon the contract. The plaintiff does pray for other relief, however. In its prayer the plaintiff asks that:
"This Court will determine what Governmental agency, if any, within the State of Florida should assume jurisdiction of this dispute * * *"
Virginia Gardens has requested the circuit court to tell it what agency has jurisdiction. The plaintiff is asking the court for legal advice. This is not the function of the courts. Declaratory decrees are not available to obtain legal advice. *202 State v. Lewis, Fla. 1954, 72 So.2d 823.
Ervin v. City of North Miami Beach, Fla. 1953, 66 So.2d 235, dealt with a case where a city sought to obtain legal advice by the use of a declaratory decree action. The complaint was dismissed and, on appeal, the Supreme Court affirmed, quoting from Ready v. Safeway Rock Co., 157 Fla. 27, 24 So.2d 808:
"We may be sure that it was not the intention of the Legislature, in adopting our present Declaratory Judgment Act, to authorize or require the judiciary to give free legal advice to any party requesting it, nor to practice law without a license." 66 So.2d at 237.
The order of dismissal is affirmed.
Affirmed.