334 So.2d 351 (1976)
DEPARTMENT OF REVENUE, State of Florida, Appellant,
v.
The MERRITT SQUARE CORPORATION, a Florida Corporation, Appellee.
No. Y-411.
District Court of Appeal of Florida, First District.
May 24, 1976.
Rehearing Denied July 21, 1976.
*352 Robert L. Shevin, Atty. Gen., J. Kendrick Tucker, Asst. Atty. Gen., for appellant.
Haywood M. Ball, Ulmer, Murchison, Ashby & Ball, Jacksonville, for appellee.
McCORD, Judge.
This is an appeal from a final declaratory judgment which held that appellee, The Merritt Square Corporation, is a "private utility" within the meaning of an exemption statute, § 212.08(4), Florida Statutes, to the extent of 60% of its operation, and that it is, therefore, exempted from payment of the sales taxes on 60% of its purchases of natural gas. Appellant, the Department of Revenue, contends that Merritt Square is not a private utility and, thus, does not fall within the exemption as to any of its operation. Merritt Square has cross-assigned as error that portion of the judgment which holds that it is liable for sales tax on 40% of its natural gas purchases. It contends that it is a private utility as to its entire "total energy plant" operation.
Section 212.08(4), Florida Statutes, the sales tax exemption here in issue, provides in pertinent part as follows:
"(4) Exemptions, items bearing other excise taxes, etc.  Also exempt are . . all fuels used by a public or private utility, including municipal corporations and rural electric cooperative associations, in the generation of electric power or energy for sale; ..."
Appellee owns a shopping center known as Merritt Square located at Merritt Island, Florida, in which it maintains and operates a "total energy plant" by means of which it generates electricity which is separately metered and sold to approximately 70 tenants of the shopping center for use in their respective businesses. The amount of electricity separately metered and sold to the tenants constitutes approximately 60% of the electricity generated by the plant. Forty per cent of the electricity generated is consumed by Merritt Square itself in heating, lighting, and cooling the common areas of the shopping center and its own offices and in lighting the parking areas of the shopping center. Each tenant is charged a maintenance fee on a square foot basis for general maintenance of the common areas of the shopping center as well as for utility services provided to the mall and parking areas of the shopping center.
Merritt Square has paid no sales tax on its purchases of natural gas used to operate the plant and this suit has resulted. The salient question is whether or not Merritt Square is a private utility as to all or a portion of its electrical generating dispensing operation. The trial court stated as follows:
"The department argues that the word `utility', insofar as it describes a type of business, is necessarily limited to those activities which are embraced in the phrase `public utility', as that term is generally used, and that the words `public or private utility', as used in the statute, are intended to refer to `public' utilities as those utilities owned by the public and `private' utilities as those utilities owned by private citizens. This use of words would require that Florida Power and Light Company, Southern Bell Telephone Company, and the Seaboard Coast *353 Line Railroad Company be excused from any statute regulating `public utilities' because the stock of these corporations is privately owned.
* * * * * *
Use of the phrase `public or private utility' is, quite obviously, intended to embrace something more than those businesses coming within the definition of public utilities or the legislature would not have included the words `or private'.
* * * * * *
The court recognizes the rules that exemptions from taxing statutes are strictly construed and that an administrative construction of a statute is entitled to great weight. Neither of these rules justifies the court in failing to give effect to the judicial determination of the clear meaning of a statute when that statute is considered in the light of the language used, the purpose of the statute and the means employed by the legislature to accomplish that purpose."
The trial court went on to hold:
"The fact that gas metered to the plaintiff is used in the generation of electricity only 60% of which is sold and it is obviously impossible to separate the purchases of gas used in the generation of electricity and that used in providing other benefits to plaintiff's tenants which are not paid for as electricity, does not prevent a reasonable application of the taxing statute to the situation presented.
Insofar as the gas purchased by plaintiff is used in the generation of electricity sold to plaintiff's tenants as electricity, plaintiff is entitled to exemption from this tax. Insofar as gas purchased by the plaintiff and used in the generation of electricity which is expended in the furnishing of incidental services such as air conditioning and lighting malls and parking areas, such gas is not used in `generation of electric power or energy for sale' as that phrase is used in the statute. To this extent, the exemption statute should be strictly construed. While the electricity so consumed is, in the final analysis, paid for by the tenant in the form of rent, it is so co-mingled with other services and benefits rendered to the tenants by the landlord that it is impossible to segregate the portion of any tenant's rent which can be reasonably allocated to the purchase of electricity for these purposes.
We agree with the ruling of the trial court. The department has administratively defined the term "private utility" to mean a utility which is privately owned. The legislature, however, under Chapter 366, Florida Statutes, has brought utilities which are privately owned into the regulatory ambit of public utilities and has there defined the term "public utility" as follows:
"Public utility defined  The term public utility as used herein means and includes every person, corporation, partnership, association or other legal entity and their lessees, trustees or receivers, now or hereafter either owning, operating, managing or controlling any plant or other facility supplying electricity or gas (natural, manufactured or similar gaseous substance) to or for the public within this state, directly or indirectly for compensation; . .." § 366.02, Florida Statutes.
The District Court of Appeal, Third District, in its opinion in Village of Virginia Gardens v. City of Miami Springs, Fla. App. (3rd), 171 So.2d 199 (1965), quoted two generally accepted definitions of the term "public utility." The first was from Southern Ohio Power Company v. Public Utilities Commission, 1924, 110 Ohio St. 246, 143 N.E. 700, 34 A.L.R. 171, as follows:
"To constitute a `public utility,' the devotion to public use must be of such character that the product and service is available to the public generally and indiscriminately, *354 or there must be the acceptance by the utility of public franchises or calling to its aid the police power of the state."
The next was from the Supreme Court of Colorado in City of Englewood v. City & County of Denver, 123 Colo. 290, 229 P.2d 667 (1951):
"We find little need to enter into a lengthy discussion of what is or what is not a public utility, because we would ultimately apply the almost universally accepted test, which summarized is, that to fall into the class of a public utility, a business or enterprise must be impressed with a public interest and that those engaged in the conduct thereof must hold themselves out as serving or ready to serve all members of the public, who may require it, to the extent of their capacity. The nature of the service must be such that all members of the public have an enforceable right to demand it." 229 P.2d at 672.
It is, thus, clear that a privately owned utility is a public utility if it holds itself out to serve the general public. Therefore, the legislature must have meant something other than a privately owned utility when it exempted from the sales tax the gas purchases of public utilities and private utilities. While the legislature did not favor us with a definition of private utility, and we have not otherwise been supplied or found such a definition, it seems apparent that a private utility is one which sells energy to a limited segment or group, such as to its own tenants, and not the public at large. To conclude otherwise would require us to say that the legislature, in exempting private utilities, established a meaningless exemption. It should never be presumed that the legislature intended to enact purposeless and, therefore, useless legislation. Sharer v. Hotel Corporation of America, Fla., 144 So.2d 813 (1962); Dickinson v. Davis, Fla., 224 So.2d 262 (1969).
We agree with the trial court's ruling that the only part of Merritt Square's operation which is entitled to the exemption is the direct sale by it of electricity to its tenants.
AFFIRMED.
BOYER, C.J., and LEE, THOMAS E., Associate Judge, concur.