384 So.2d 648 (1980)
TELEPROMPTER CORPORATION et al., Petitioners,
v.
Paula F. HAWKINS et al., Respondents.
No. 56291.
Supreme Court of Florida.
May 29, 1980.
*649 The Law Offices of Hogan & Hartson, Washington, D.C., and William A. Gillen, Edward M. Waller, Jr., and David C. Shobe of Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, for Teleprompter Corp.
George Maxwell, III, of Rossetter & Maxwell, Melbourne, for American Television and Communications Corp.
Prentice P. Pruitt, Barrett G. Johnson and Norman H. Horton, Jr., Tallahassee, for Florida Public Service Commission.
C. Roger Vinson of Beggs & Lane, Pensacola, for Gulf Power Company, intervenor.
W. Robert Fokes of Mahoney, Hadlow & Adams, Tallahassee, for Florida Cable Television Ass'n, amicus curiae.
Lee L. Willis and James D. Beasley of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for Tampa Elec. Co., amicus curiae.
BOYD, Justice.
This cause is before us to review an order by the Public Service Commission certifying that it has authority to regulate "pole attachment" agreements. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Pole attachment agreements are lease agreements between utilities and cable television companies which authorize the latter to use the excess space on utility poles for the purpose of providing their customers cable television service. Because the utilities have superior bargaining position by virtue of their ownership and control over utility poles along with the accompanying easements, Congress granted the Federal Communications Commission (FCC) the authority to regulate these agreements except where such matters are regulated by the state. Each such state needed to certify that:
(A) it regulates such rates, terms, and conditions; and
(B) in so regulating such rates, terms, and conditions, the State has the authority to consider and does consider the interests of the subscribers of cable television services, as well as the interests of the consumers of the utility services.
Communications Act Amendments of 1978, Pub.L.No. 95-234, (47 U.S.C. § 224 (c)(2)).
In response to this impending federal regulation, the commission sent notice of certification to the FCC. Subsequently, the commission gave notice and called for briefs from interested parties, following which it entered an order declaring that it has the authority to regulate pole attachment agreements. The petitioners claim that the commission does not have authority to regulate the agreements or consider the interests of cable television subscribers. We agree.
Several years ago the commission held that it could not require utilities to enter into pole attachment agreements. Southern Bell Tel. & Tel. Co., 65 PUR 3d 117 (Fla.Pub.Serv.Comm'n. 1966). In doing so it reasoned:
In 1913, when the Florida legislature enacted a comprehensive plan for the regulation of telephone and telegraph companies in this state, and conferred upon the commission authority to administer *650 the act and to prescribe rules and regulations appropriate to the exercise of the powers conferred therein, the science of television transmission and the business of operating community antenna television systems were not in existence. The 1913 Florida legislature, therefore, could not have envisioned  much less have intended to regulate and control  the television transmission facilities and services with which we are concerned. This is exactly the same kind of situation described by the supreme court of Florida in practically identical language in its opinion in the case of Radio Teleph. Communications v. Southeastern Teleph. Co. (Fla. 1964) 57 PUR 3d 136, 170 So.2d 577, when it held that this commission did not have jurisdiction over radio communication service, notwithstanding the interconnection of such radio service with a regulated utility's telephone landline. As the court pointed out in that case, the legislature of Florida has never conferred upon this commission any general authority to regulate "public utilities." Traditionally, each time a public service of this state is made subject to the regulatory power of the commission, the legislature has enacted a comprehensive plan of regulation and control and then conferred upon the commission the authority to administer such plan. This has never been done in so far as television transmission and community antenna television systems are concerned. Community antenna television systems have never been defined as "public utilities" by the legislature, nor is there anything in this record which would justify the conclusion that such systems are vested with a public interest; in actual fact, they may be of such character as to justify public regulation and control. That, however, is a matter for determination by the state legislature. We must conclude on the basis of the record before us, and the present status of the laws of this state, that the Florida Public Service Commission has no jurisdiction or authority over the operations of community antenna television systems and the rates they charge, or the service they provide to their customers.
Id. at 119-20. See also, Twin Cities Cable Co. v. Southeastern Tel. Co., 200 So.2d 857 (Fla. 1st DCA 1967).
Since that decision there has been no relevant change in the commission's statutory grant of jurisdiction. Therefore the reasoning in that decision is still relevant. No reason was given for asserting jurisdiction other than to preempt the FCC from regulating pole attachment agreements. Although we share the concern about federal intervention in an area the state may be better equipped to handle, such concern is not enough to extend the Public Service Commission's jurisdiction. Only the legislature can do that.
We therefore quash the commission's order.
It is so ordered.
ENGLAND, C.J., and OVERTON, SUNDBERG, ALDERMAN and McDONALD, JJ., concur.
ADKINS, J., dissents.