490 So.2d 60 (1985)
DEVON-AIRE VILLAS HOMEOWNERS ASSOCIATION, NO. 4, INC., a Not-for-Profit Florida Corporation, Appellant,
v.
AMERICABLE ASSOCIATES, LTD., a Florida Limited Partnership, and Dade County, a Political Subdivision of the State of Florida, Appellees.
No. 84-675.
District Court of Appeal of Florida, Third District.
December 17, 1985.
Motions to Appear as Amicus Curiae and Rehearing Denied February 18, 1986.
Keith, Mack, Lewis & Allison and Robert A. Cohen, Miami, for appellant.
Fine, Jacobson, Schwartz, Nash, Block & England and Gary S. Brooks, Robert A. Ginsburg, Co. Atty., and Stephen P. Lee, Asst. Co. Atty., Miami, for appellees.
Frates, Bienstock & Sheehe and Terry S. Bienstock, Miami, and Alan D. Lash, for movants Storer Communications, Inc., Dade Cable Television of Florida, Inc. and Storer Cable TV of Florida, Inc.
Robert D. Zahner, City Atty., Coral Gables, for movant City of Coral Gables.
Catlin, Saxon, Tuttle and Evans and H. James Catlin, Jr., Miami, for movant Dynamic Cablevision of Florida, Inc.
Before BARKDULL, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
The appellant, Devon-Aire Villas Homeowners Association No. 4, Inc., (Homeowners), is a not-for-profit corporation organized for the purpose of holding and operating certain lands as set forth in a *61 recorded plat.[1] Without the consent of Homeowners, and ostensibly pursuant to certain Dade County ordinances, the appellee, Americable Associates, Ltd. (Americable), entered upon Homeowners' lands and utilized certain easements dedicated on the plat for public utilities to install underground cable television equipment.
Homeowners sued Americable and the County for trespass. Homeowners asked that the court declare that (1) Americable is not a public utility and thus not entitled to use easements dedicated for the use of "public utilities," and (2) Section 8A-127 of the Dade County Code (pursuant to which Americable, a private entity, is licensed to use easements) is unconstitutional as depriving Homeowners of property without just compensation. Homeowners also requested that a mandatory injunction be entered requiring the removal of the cables. The trial court entered a summary judgment for Americable and the County, and Homeowners appeals.
Since the appellees concede that Section 8A-127 of the so-called Cable TV Ordinance authorizes cable television companies to use only those streets, rights-of-way and easements in which Dade County has an interest or which have already been dedicated to public use,[2] and since it is undisputed that Americable used only platted public utility easements to install its cable television facilities, we need not concern ourselves with Homeowners' argument that the ordinance unconstitutionally gives to Americable rights to use the property of Homeowners without just compensation.[3],[4] If cable television is, as Americable and the County urge, a public utility, then the cable television company may use the easement dedicated for the use of public utilities without any unlawful taking occurring; however, if cable television is not a public utility, then its use of this easement and entry upon Homeowners' land is a trespass which should have been declared and enjoined.
As will be seen, the phrase "public utility" eludes precise definition. Nonetheless, an examination of various statutory provisions and decisional law persuades us that a public utility is typically a creature of statute which is impressed with a public use, provides services generally considered essential to the society, and enjoys certain powers usually reserved to the sovereign. With these indicia in mind, we conclude that cable television is not a public utility and reverse the contrary judgment of the trial court.

I.

A.
We note at the outset that the Public Service Commission does not have jurisdiction to regulate cable television. Teleprompter v. Hawkins, 384 So.2d 648 (Fla. 1980). Because, however, a public utility need not necessarily be under the auspices of the Public Service Commission, see Radio Telephone Communications v. Southeastern Telephone Company, 170 So.2d 577, 581 (Fla. 1964) ("[T]he Legislature of Florida has never conferred upon *62 the Florida [Public Service] Commission any general authority to regulate `public utilities'"), the fact that it is not is concededly not dispositive of the question whether cable television is a public utility. But the fact that the Legislature, which traditionally has subjected public utilities to the jurisdiction of the Commission, has not seen fit to similarly subject cable television, strongly suggests that cable television should not be considered a public utility. As the court in Teleprompter noted:
"Community antenna television systems have never been defined as `public utilities' by the legislature, nor is there anything in this record which would justify the conclusion that such systems are vested with the public interest; in actual fact, they may be of such character as to justify public regulation and control. That, however, is a matter for determination by the state legislature."
384 So.2d at 650.

B.
Apart from the various Florida Statutes which define certain entities as "public utilities" in the context of defining the jurisdiction of the Public Service Commission,[5] the term "public utility" is also found in statutes granting public utilities the right of eminent domain  that is, statutes permitting the taking of private property for the public good.[6],[7] Cable television is not given the right of eminent domain in any of these statutes.
Under the Florida Constitution, eminent domain is "an inherent attribute of sovereignty to be exercised in case of public *63 exigency or for the public good." Daniels v. State Road Department, 170 So.2d 846, 848 (Fla. 1964). See Art. X, § 6, Fla. Const. A public utility granted the right of eminent domain may not exercise it absent a showing of "public use." See Clark v. Gulf Power Company, 198 So.2d 368, 371 (Fla. 1st DCA 1967). A public use, in turn, is "one which is fixed and definite, in which the public has an interest, and the terms and manner of its enjoyment must be within the control of the state." Id. at 371. A public use must be available to all people equally, although it is not essential that the benefits of the public use be received by the whole public or even a large part of it. Higgs v. City of Fort Pierce, 118 So.2d 582 (Fla.2d DCA 1960). That the Legislature has not granted the right of eminent domain to cable television companies as it has granted that right to specified public utilities, although again not dispositive of the question whether cable television is or is not a public utility, surely suggests that it is not.
Clearly the Legislature of this State has not as of this time seen fit to declare cable television a public utility. This legislative silence speaks eloquently that cable television is, in the eyes of the Legislature, not so necessary to the functioning of a modern society and not imbued with such publicness that it must be regulated by a public service commission, or invested with the power of eminent domain.

II.
We turn now to the question whether cable television should be considered a public utility as that term has been defined by the courts.
In Higgs v. City of Fort Pierce, 118 So.2d 582, the court held that the defendant-city did not have to submit a proposed gas utility to a referendum vote under a charter provision that required a vote if such a public utility already existed in private hands, since the local private gas dealers did not come within the court's definition of public utility:
"To constitute a `public utility,' the devotion to public use must be of such character that the product and service is available to the public generally and indiscriminately, or there must be the acceptance by the utility of public franchises or calling to its aid the police power of the state... .
"Aside from the statutory definition, the term `public utility' implies a public use, carrying with it the duty to serve the public and treat all persons alike, without discrimination, and it precludes the idea of service which is private in its nature, whether for the benefit and advantage of a few or of many... ."
Id. at 585 (citations omitted).
Similarly, in Village of Virginia Gardens v. City of Miami Springs, 171 So.2d 199 (Fla. 3d DCA 1965), this court, holding that the City of Miami Springs was not acting as a public utility when supplying water to the Village of Virginia Gardens for distribution to the village residents, and was thus not subject to the jurisdiction of the Public Service Commission, discussed the nature of a "public utility":
"[T]o fall into the class of a public utility, a business or enterprise must be impressed with a public interest and ... those engaged in the conduct thereof must hold themselves out as serving or ready to serve all members of the public, who may require it, to the extent of their capacity. The nature of the service must be such that all members of the public have an enforceable right to demand it."
Id. at 201 (citations omitted).
See also Department of Revenue v. Merritt Square Corporation, 334 So.2d 351 (Fla. 1st DCA 1976) (citing Section 366.02, Florida Statutes, and holding that under that statute a privately owned utility supplying electricity or gas and holding itself out to serve the general public is a public utility).
While an argument might be made that cable television should "be available to the public generally," 118 So.2d at 585, and is "impressed with a public interest," 171 So.2d at 201, we do not believe that the *64 value and necessity of cable television is so self-evident that this court should arrogantly declare this newest rage of the media world to be the equivalent of, for example, electricity and water. As the court in Teleprompter v. Hawkins observed in a different context, if cable television is so vested with the public interest as to justify public regulation and control, that "is a matter for determination by the state legislature." 384 So.2d at 650. Similarly, it seems to us that if cable television is so vested with the public interest as to give it the right to use easements on private land dedicated for public use only, the Legislature, rather than this court, should say so.
The County calls our attention to some cases in other jurisdictions wherein the courts have concluded that cable television is a public utility. However, as these cases reveal, this conclusion was reached either because the term "public utility" in the particular state statute or constitutional provision under consideration was susceptible to a construction that included cable television, see, e.g., White v. City of Ann Arbor, 406 Mich. 554, 572, 281 N.W.2d 283, 289 (1979) (where public utility defined in statute as an entity "providing gas, electricity, water, steam, telephone, sewer, or other services of a similar nature," the "informative and communicative aspects and potential" of cable television made it of a similar nature to telephone services and thus a public utility (emphasis supplied))[8],[9]; City of Issaquah v. Teleprompter Corp., 93 Wash.2d 567, 611 P.2d 741 (1980) (en banc) (notwithstanding that statute dealing with the conversion of electric and communication facilities to underground facilities expressly included cable television within the definition of "communication utility," cable television held not to be a public utility for purpose of statute proscribing municipality from operating a public utility without authorization), or because existing legislative pronouncements pointed decisively to the proposition that cable television was so vested with the public interest as to require a holding that it was a public utility, see Hoffman v. Capitol Cablevision System, Inc., 52 A.D.2d 313, 317-18, 383 N.Y.S.2d 674, 678 (1976) (legislative finding in enacting Article 28 of the executive law regulating and controlling cable television "that while ... [cable television] operations must be subject to state oversight, they also must be protected from undue restraint and regulation so as to assure cable systems with optimum technology and maximum penetration in this state as rapidly as economically and technically feasible; that municipalities and the state would benefit from valuable educational and public services through cable television systems," leads to conclusion that cable television is public utility for purpose of using existing utility easements (brackets in original)); Crowley v. New York Telephone Co., 80 Misc.2d 570, 571, 363 N.Y.S.2d 292, 293-4 (1975) ("Article 28 of the Executive Law of the State of New York has, to all intents and purposes, established a new form of utility presided over by a commission on cable television"). *65 Thus, the cases relied on by the County are not only distinguishable, but, more important, support our announced view that elevating cable television to the preferred status enjoyed by public utilities is a matter for the Legislature. We think it far from obvious that cable television is, at this point in time, so impressed with the public interest, or so essential to the functioning of our society, that we, as a court, should judicially declare it to be a public utility.
Reversed and remanded for further proceedings.
BARKDULL, J., concurs.
BASKIN, Judge (dissenting).
Devon-Aire Villas Homeowners Association [Devon-Aire] appeals an adverse final summary judgment entered in its action against appellees Americable Associates, Ltd. [Americable] and Dade County; the action was predicated upon Americable's allegedly unwarranted entry upon Devon-Aire's property and its unauthorized use of a platted public utility easement to install cable television facilities.
Devon-Aire is a homeowner's association organized to hold and to operate certain property described in a recorded plat. The plat expressly reserves easements for the installation and maintenance of public utilities. In August, 1982, without the consent of Devon-Aire but with a license issued by Dade County, Americable entered upon Devon-Aire's property and used the platted easement to install underground cable television facilities. Devon-Aire then filed this lawsuit, seeking damages for trespass, as well as injunctive and declaratory relief. The gravamen of the action was Devon-Aire's assertion that because Americable is not a public utility entitled to the privilege of entering upon Devon-Aire's property to use the platted easement reserved solely for public utilities, Americable's use of the easement for the installation and maintenance of cable television services was unauthorized, unlawful, and in derogation of Devon-Aire's property rights. The trial court entered final summary judgment in favor of Americable and Dade County, and this appeal ensued.
The pertinent issue on appeal is whether cable television constitutes a "public utility" within the contemplation of the easement expressly reserved for use by public utilities and in accordance with Dade County ordinances governing subdividing of land. The issue is one of first impression in Florida. The resolution of this question involves a two-fold task: (1) defining the term "public utility"; and (2) determining whether cable television falls within the definition for purposes of the express easement grant in this case.
The term "public utility" has been subject to definitional variation by courts and legislatures throughout the United States. The precise issue presented here requires the court to ascribe a meaning to "public utility" as that term is used in the particular context of the easement grant. For this reason, we need not be concerned with the general Florida statutory scheme encompassing public utilities, and it is irrelevant to our determination that cable television is not included as a public utility within this statutory scheme.[*] The court's statement in Aberdeen Cable TV Service, Inc., v. City of Aberdeen, 85 S.D. 57, 63, 176 N.W.2d 738, 741 (1970) (quoting 73 C.J.S. Public Utilities § 2 p. 993), cert. denied, 400 U.S. 991, 91 S.Ct. 455, 27 L.Ed.2d 439 (1971), points the way:
The question of whether or not a given business, industry or service is a public utility "does not depend on legislative definition, but on the nature of the business or service rendered ... and the question whether or not a particular company or service is a public utility is a judicial one."
The judicial task commences with an examination of various definitions of the term *66 "public utility." Florida case law defines "public utility":
[T]o fall into the class of a public utility, a business or enterprise must be impressed with a public interest and that those engaged in the conduct thereof must hold themselves out as serving or ready to serve all members of the public, who may require it, to the extent of their capacity.
Village of Virginia Gardens v. City of Miami Springs, 171 So.2d 199, 201 (Fla. 3d DCA 1965) (quoting City of Englewood v. City & County of Denver, 123 Colo. 290, 229 P.2d 667 (1951)).
Black's Law Dictionary 1108 (5th ed. 1979) defines "public utility" as:
Any agency, instrumentality, business industry or service which is used or conducted in such manner as to affect the community at large, that is, which is not limited or restricted to any particular class of the community.
"Public utility" as defined by the Random House Dictionary of the English Language 1162 (1966) means:
1. a business enterprise, as a public-service corporation, performing an essential public service and regulated by the federal, State, or local government.
Applying these definitions, it is clear that cable television meets the criteria of "public utility." Cable television provides to the community information and entertainment which might not otherwise be available; thus, it is an entity which serves the public and is impressed with the public interest. As the Michigan Supreme Court stated in White v. City of Ann Arbor, 406 Mich. 554, 576, 281 N.W.2d 283, 290 (1979) (Moody, J., concurring):
[I]t is clear that cable television provides a service that is important to the public. The United States Supreme Court, in the context of a decision involving cable television, has noted the importance of the communication industry:
"[F]or broadcasting is demonstrably a principal source of information and entertainment for a great part of the Nation's population." United States v. South-western Cable Co., 392 U.S. 157, 177, 88 S.Ct. 1994, 2005, 20 L.Ed.2d 1001 (1968). While cable television may not cater to the physical needs of man as do utilities that provide heat, light and power, it provides an equally important service in terms of the rational, psychological and esthetic growth processes of man.
See also Hoffman v. Capitol Cablevision System, Inc., 52 A.D.2d 313, 383 N.Y.S.2d 674, appeal denied, 40 N.Y.2d 806, 359 N.E.2d 438, 390 N.Y.S.2d 1025 (1976); Staminski v. Romeo, 62 Misc.2d 1051, 310 N.Y.S.2d 169 (Sup.Ct. 1970).
Although cable television does not lie within the jurisdiction of the Florida Public Service Commission, it is subject to regulation both by the FCC and by Chapter 8A, article 4 of the Metropolitan Code of Dade County [Dade County Code]. Moreover, Dade County Code, section 8A-128.5 requires licensed cable television companies to serve the public to the fullest extent possible under the law. Section 8A-128.5 provides:
The county manager shall ... insure that the licensee serve the best interest of the total community in Dade County, Florida and provide full television service to the extent permitted by the FCC.
These reasons lead to the conclusion that cable television falls within the broad definition of the term "public utility."
The next consideration is whether Americable is entitled to use the platted easement expressly reserved for public utilities. The Devon-Aire plat states:
The easements as shown on the attached plat are hereby reserved for the installation and maintenance of public utilities or pedestrian ingress-egress combined with the installation and maintenance of public utilities as designated on this plat.
The plat fails to enumerate the specific services included as public utilities entitled to use the easement. Because I believe that cable television is a public utility, I conclude that Americable is entitled to use the non-specific public utility easement. *67 This view does not violate the rule against extending the use of easements created for a specific purpose. Kendry v. State Road Department, 213 So.2d 23 (Fla. 4th DCA 1968), cert. denied, 222 So.2d 752 (Fla. 1969). Cf. Consolidated Cable Utilities, Inc. v. City of Aurora, 108 Ill. App.3d 1035, 64 Ill.Dec. 464, 439 N.E.2d 1272 (1982) (where public utility easement was expressly limited in scope to certain enumerated services, plain meaning of reservation in easement did not include other unnamed public utilities, include cable television).
Furthermore, "[t]he public interest clearly outweighs the harm, if any, to the property owner imposed by an additional utility using easements on his property within the scope of the burden contemplated by the original conveyances by which the easements were created." Hoffman, 52 A.D.2d at 318, 383 N.Y.S.2d at 678.
Even if the term "public utility" as used in the easement could be considered ambiguous, I would apply the well-settled axiom that ambiguous language in a plat must be construed against the developer who created it and in favor of the public. North Lauderdale Corp. v. Lyons, 156 So.2d 690 (Fla. 2d DCA 1963). See Servando Building Co. v. Zimmerman, 91 So.2d 289 (Fla. 1956) (en banc); Coffman v. James, 177 So.2d 25 (Fla. 1st DCA 1965). It is within the public interest to allow Americable use of the platted easement to provide valuable information and entertainment to the community. As stated in Hoffman, 52 A.D.2d at 318, 383 N.Y.S.2d at 678:
Obviously, to prohibit cable television companies from using existing utility easements, the most economically feasible and least environmentally damaging vehicles for installing cable systems, until compensation were paid to the landowner or condemnation proceedings were instituted, would increase the cost to and perhaps even deny to the public "these valuable educational and public services".
Further support for Americable's entitlement to use the platted easement is found in chapter 28 of the Dade County Code. Section 28-14(D)(1) provides:
Easements across lots ... shall be provided for utilities where necessary.
Although chapter 28 does not designate the specific services entitled to use easements created pursuant to its provisions, section 28-15(e) contemplates the use of easements by cable television by expressly including it in the list of utilities required to install their lines underground:
[A]ll utility lines including but not limited to those required for electrical power distribution, telephone and telegraph communication, street lighting and television signal service shall be installed underground. (emphasis supplied)
I have noted the efficacy of allowing cable television to use already existing public utilities easements. Thus, Americable's entitlement to use a duly created public utility easement comports with the stated intent of chapter 28, as set forth in section 28-2(b):
The efficient adequate and economic supply of utilities and services to land developments.
I would therefore hold that Americable is permitted, as a matter of law, to use the platted public utility easement on Devon-Aire's property, and would affirm the final summary judgment.
ON MOTIONS FOR LEAVE TO APPEAR AS AMICUS CURIAE AND AMERICABLE'S MOTION FOR REHEARING
DANIEL S. PEARSON, Judge.
During the time allotted for rehearing of our decision rendered December 17, 1985, Motions for Leave to Participate as Amicus Curiae were filed by Storer Communications, Inc.,[1] Dynamic Cablevision of Florida, Inc. and the City of Coral Gables. Even were we disposed to entertain such untimely efforts to appear in this case, our *68 review of the motions leads us to conclude that, untimeliness aside, these putative amici would add nothing to our understanding of the issues in the case.
Storer and Dynamic tell us in their motions that their primary concern is the possibility that our decision may be construed to include easements other than those dedicated for public utilities. Considering that both the majority and dissenting opinions in this case focused solely on the question whether a cable television company was or was not a public utility, the envisioned horrible is, in our view, rather remote.
The motion of the City of Coral Gables has no redeeming value whatsoever: its expressed interest to be heard in this litigation is not on its own behalf, but on behalf of its licensee, Dynamic, which (although our disposition of Dynamic's late effort may belie this conclusion) can take care of itself.
Americable's Motion for Rehearing fares no better.[2] It asserts, for the very first time, that its position "is not premised upon its status as a public utility." It goes on to say that has it initially "relied on or argued" its status as a public utility, it would have certainly informed this court of the "Cable Communications Policy Act of 1984,"[3] which, it now and for the first time contends, requires local governments to allow public utility easements to be used for cable television facilities.
Americable's assertion that its position on appeal was not premised upon its status as a public utility is not only new, but is inconsistent with the position Americable espoused at oral argument and Dade County's position in its brief, in which Americable, at the least, acquiesced.[4] Its contention that it chose not to mention the Cable Communications Policy Act of 1984, of which it concedes it was aware, is utterly incomprehensible in light of the fact that, at all times, the issue being litigated was whether Americable could use the public utility easement in question.
We will not countenance Americable's post-hoc change of stripes, and we decline to consider its belated contention that the Cable Communications Policy Act of 1984 controls this case. See, e.g., Sarmiento v. State, 371 So.2d 1047 (Fla.3d DCA 1979), approved, 397 So.2d 643 (Fla. 1981) (rehearing denied where issue raised for first time on motion for rehearing); Cartee v. Florida Department of Health & Rehabilitative Services, 354 So.2d 81 (Fla. 1st DCA 1977) (rehearing denied where argument based on United States Supreme Court opinions not advanced until rehearing); Price Wise Buying Group v. Nuzum, 343 So.2d 115 (Fla. 1st DCA 1977) (rehearing denied where amendment to Florida Administrative Rule not argued until rehearing). Americable's new argument, which may involve the development of several factual issues not developed in the record before us, see Loranger v. State, Department of Transportation, 448 So.2d 1036 (Fla. 4th DCA 1983), may be brought to the attention of the trial court to which, because we have reversed the summary judgment entered in Americable's favor, we have remanded this case.[5] "It is settled that upon remand with general directions for further proceedings, a trial judge is vested with *69 broad discretion in handling or directing the course of the cause thereafter." Veiner v. Veiner, 459 So.2d 381, 383 (Fla.3d DCA 1984), rev. denied, 469 So.2d 750 (Fla. 1985). If the trial judge does consider Americable's new argument and rejects it, Americable may, of course, appeal at that time. For now, however, "principles of appellate decision-making dictate that we have the benefit of [the issue] having been first considered and decided by the lower court." City of Coral Gables v. Puiggros, 376 So.2d 281, 285 (Fla.3d DCA 1979).
Accordingly, the several motions for leave to appear as amicus curiae are denied; Americable's motion for rehearing or, in the alternative, to certify is denied; and all other pending motions for oral argument and for extensions of time within which to file briefs are denied as moot.
NOTES
[1] According to Homeowners' complaint, the corporation operates Devon-Aire Villas Section Eight, which contains 104 villas and appurtenant common elements and open spaces.
[2] Section 8A-127 provides in pertinent part:

"A license may be issued to a license, ... granting the non-exclusive right, privilege and permit ... to install, maintain and operate transmission and distribution facilities and additions thereto in, under, over, along, across and upon the present and future highways, streets, alleys, rights-of-way, easements and public property in ... Dade County for the purpose of transmission and distribution by cable of audio and video signals by means of electrical impulses for sale to inhabitants of said county... ."
[3] See, e.g., Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982); Storer Cable T.V. v. Summerwinds Apartments, 451 So.2d 1034 (Fla. 3d DCA 1984).
[4] We also do not concern ourselves with, and find totally without merit, Americable's argument in defense of the judgment in its favor that Homeowners is precluded by the doctrines of res judicata and collateral estoppel from bringing this action against Americable.
[5] E.g., Section 366.02(1), Florida Statutes (1985), defines "public utility" as an entity supplying electricity or gas to the public, and Section 366.04, Florida Statutes (1985), gives the Commission jurisdiction over such entity. Section 367.021(3), Florida Statutes (1985), defines "utility" as an entity supplying "water or sewer services to the public for compensation," and Section 367.121, Florida Statutes (1985), gives the Commission jurisdiction of this utility. Section 365.01(3) defines "public utility" as an entity "owning or operating ... equipment or facilities for conveying or transmitting messages or communications by telephone or telegraph to the public for compensation." Because Chapter 365 elsewhere specifically defines "private wire" as including the "medium of ... television or any other means by which the voice or electrical impulses are sent over a wire" (presumably, cable television), the omission of cable television from the definition of public utility must be taken as intentional. See Russello v. United States, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (where statute includes particular language but another does not, it is generally presumed that the disparate inclusion or exclusion is intentional). Cf. Thayer v. State, 335 So.2d 815 (Fla. 1976) (under doctrine of expressio unius est exclusio alterius, where statute enumerates the thing or things on which it is to operate, it is ordinarily to be construed as excluding from this operation all those things not expressly mentioned); Rebich v. Burdine's and Liberty Mutual Insurance Company, 417 So.2d 284 (Fla. 1st DCA), rev. denied 424 So.2d 762 (Fla. 1982) (since physicians not specifically mentioned in two-year workers' compensation statute of limitations, their payment claims not governed by that statute).
[6] The power of eminent domain is granted to railroad companies, see § 361.025, Fla. Stat. (1985); water works companies, see § 361.04, Fla. Stat. (1985); petroleum companies, see § 361.06, Fla. Stat. (1985); telegraph and telephone companies, see § 362.02, Fla. Stat. (1985). The power of eminent domain has also been granted to government to erect public buildings; further public education; conserve the public health, promote morals and safety of the state; aid in slum clearance projects; aid in drainage; aid in flood control; establish airports; establish parking facilities; establish public highways and bridges; preserve areas of historic interest; preserve primitive areas, parks and recreational facilities; and establish dams. See generally 21 Fla.Jur.2d Eminent Domain § 35-53 (1980).
[7] The term "public utility" is also found in a statute empowering municipalities to make expenditures for certain things considered as public utilities. Section 180.07, Florida Statutes (1985), provides:

"Public Uitilities; combination of plants or systems; pledge of revenues. 
"(1) All such reservoirs, sewerage systems, trunk sewers, intercepting sewers, pumping stations, wells, intakes, pipelines, distribution systems, purification works, collecting systems, treatment and disposal works, airports, hospitals, jails and golf courses, and gas plants and distribution systems, whether heretofore or hereafter constructed or operated, are considered a public utility within the meaning of any constitutional or statutory provision for the purpose of acquiring, purchasing, owning, operating, constructing, equipping and maintaining such works."
[8] The White court was apparently influenced to bring cable television within the statutory definition by factual considerations unique to the case and not present here. The court noted that using the old poles of the electric company rather than building new ones "provides for an orderly layout of the required facilities in ... areas so as not to require the utilization of unneeded and sometimes unsightly, poles, cables and wires." 406 Mich. at 574, 281 N.W.2d at 289-90.
[9] The White court held that where a constitutional amendment which made "any public utility furnishing light, heat or power" revocable at will unless approved by the voters, cable television was not a public utility under the amendment. The court also noted that it declined to expand the definition of public utility to include cable television for purposes of the revocable at will amendment, since were a cable television franchise revocable at will, Michigan might have problems attracting cable television companies, since such companies might fear the uncertainty of having their right to broadcast revoked based merely on public sentiment due to a controversial production or editorial comment. The court likewise noted the First Amendment problems that could be involved in making cable television companies subject to such a provision. The State of Florida has no such provision, and thus, this section of White has no application in the instant case.
[*] I note that cable television is not a service included within the very narrow definition of public utility set forth in section 366, Fla. Stat. (1981) (referring only to electricity and gas). Furthermore, cable television is not a public utility subject to the authority of the Florida Public Service Commission. Teleprompter Corp. v. Hawkins, 384 So.2d 648 (Fla. 1980).
[1] This motion was on behalf of Storer Communications, Inc., Dade Cable Television of Florida, Inc. and Storer Cable TV of Florida, Inc., collectively, Storer.
[2] Dade County, in apparent recognition of the fact that it has no real interest in the outcome of this controversy, has not filed any motion for rehearing.
[3] 47 U.S.C.A. §§ 521-559 (West Supp. 1985).
[4] The County's brief contended that Americable was a public utility and thus entitled to use a public utility easement. Americable's brief was confined to its res judicata/collateral estoppel theory, which we rejected out of hand. See p. 61 n. 4. To the extent that Americable's motion for rehearing attempts to reargue this position, the motion must be denied on that ground. See Fla.R.App.P. 9.330(a).
[5] Had this case come to us from a lower court decision in homeowners' favor, we would have affirmed that decision, and Americable's untimeliness in raising this issue may have resulted in the issue, unless jurisdictional, being permanently waived. Cf. Dober v. Worrell, 401 So.2d 1322 (Fla. 1981) (holding district court of appeal in error for reversing summary judgment entered for defendant so that plaintiff could plead fraudulent concealment on remand for the first time).