WALDEN, Judge.
This is a tale of two cities — the city of Indian Harbour Beach (plaintiff-appellant) and the city of Melbourne (defendant-ap-pellee).
For some time Melbourne furnished water from its utility plant to Indian Harbour Beach residents, all without incident. There was no franchise agreement or contract and apparently Melbourne was a de facto franchiser, or a franchiser at sufferance, as concerns Indian Harbour Beach.
A dispute arose between the cities as concerns the right to regulate these water rates.[1]
In 1963 the Legislature delegated to Indian Harbour Beach, via charter provisions, the power to establish rates for water furnished to it by other municipal corporations. On the other hand the Legislature in 1969 granted to Melbourne, via charter provisions, the power to establish rates for water furnished by it to consumers located outside its city limits. The two provisions are obviously repugnant under the facts of the case.
To further obfuscate, Indian Harbour enacted its Ordinance No. 99 which regulated downward the rates charged by Melbourne,[2] and then its Ordinance No. 100, which made it unlawful for Melbourne to discontinue service to Indian Harbour customers, even for non-payment, without first obtaining the express consent of Indian Harbour.[3]
The obvious answer to this unfortunate impasse would have been for those in municipal authority in the respective cities to negotiate a fair franchise agreement and rate schedule, based upon the cost of production and service and the other usual criteria. Franchise rights stem from grants of the state’s sovereign power. See McQuillin on Municipal Corporations, Vol. 12, § 34. Since the Public Service Commission is expressly forbidden from regulating the utilities in question, such power can and should be exercised by franchise agreements entered into by the municipalities.
However, the city fathers were unable or unwilling to adjust the differences. *424 Thus, the controversy has been placed before the judicial branch. Without plumbing the details, Indian Harbour sought in-junctive and declaratory relief in its favor and recovery of claimed excess charges. Melbourne counter-claimed, asking that the two mentioned ordinances be declared invalid and for recognition of their dominant position in setting the rates. The trial court simply granted Melbourne’s Motion for Summary Judgment. We interpret this judgment to mean that the Indian Harbour Beach charter and ordinances heretofore mentioned are invalid and that the Melbourne charter is valid, with the consequence that Melbourne is entitled to exclusively regulate rates under the circumstances.
We have neither found nor been shown case law which would solve this controversy. Clay Utility Company v. City of Jacksonville, Fla.App.1969, 227 So.2d 516, which defined non-discriminatory extraterritorial utility rates, would have been applicable if our dilemma involved a city supplying rural customers. Instead we have two municipalities, theoretically equally independent. City of Treasure Island v. Decker, Fla.App.1965, 174 So.2d 756, held that one city, while exercising extraterritorial proprietary jurisdiction, was bound by the zoning laws of the unwilling host city. The decision there rests on different facts than ours, but its harmonization of the intercity conflicts is also our object.
We reason that it would be unconscionable for Indian Harbour Beach to have the power to compel Melbourne to continue to •furnish this utility regardless of the circumstances and to also have the unilateral power to determine the rates to be charged by Melbourne. To the extent that Indian Harbour Beach customers were charged less than fair and equitable rates based on costs, reserves, etc., the citizens of Melbourne would be, in effect, subsidizing Indian Harbour Beach people with their tax monies and thereby be deprived of their property and rights without due process. Equally, on the other hand, we hold that it would not be acceptable for Melbourne to have the unilateral power to set such rates, as an excess rate imposed by them on Indian Harbour Beach would be a subsidy of Melbourne citizens by Indian Harbour Beach citizens and would be similarly repugnant.
As we consider and catalog the options, we note one course we do not choose to take — one that neither has even suggested. We conservatively decline to convene the court into a rate making and regulatory body. This would, in effect, cause us to forge a franchise agreement upon unwilling parties and usurp the function of legislative bodies.
The parties failing to reach an accord and franchise, we feel the only solution is for them to obtain a divorcement each from the other. Under the circumstances, we know of no statutory or other requirement that would require Melbourne, in the absence of a franchise or contract, to furnish water to some other city which is unwilling to accept its rate proposals and structure. Likewise, we know of no law that would make Indian Harbour Beach permit the intrusion and maintenance of another municipality’s utility lines and services contrary to its municipal will when its rates and services were not acceptable to Indian Harbour Beach.
We fully recognize and respect the general maxims of statutory interpretation. For instance, courts should avoid statutory constructions which place statutes in conflict with each other. Howarth v. City of DeLand, 1934, 117 Fla. 692, 158 So. 294; Markham v. Blount, Fla.1965, 175 So.2d 526. Courts must assume the Legislature intended to enact effective laws and that if possible a construction giving effect to all statutes in the same field should be adopted. We must “look for a reason to uphold the act and to adopt any reasonable view that will do so.” Tyson v. Lanier, Fla.1963, 156 So.2d 833. Consistency and harmony are of prime importance. Wood- *425 ley Lane, Inc. v. Nolen, Fla.App.1962, 147 So.2d 569; Arvida Corporation v. City of Sarasota, Fla.App.1968, 213 So.2d 756. Our holdings are an attempt to avoid doing violence to these maxims.
We, therefore, respectfully hold:
1. That the respective charter provisions are valid and that each municipality possesses the rate regulating powers there provided, if allowed and provided for by a franchise agreement.
2. That in the absence of a franchise or other contractual arrangement, Melbourne is under no obligation and cannot be made to continue with water services to Indian Harbour Beach. Thus, the unilateral undertaking represented by Indian Harbour Beach’s Ordinance No. 100 is invalid.
3. Because of the conflict in the respective charters as concerns rate regulations, we feel that Indian Harbour Beach Ordinance No. 99 is unenforceable and that there has been no showing that the rates charged by Melbourne are excessive so as to entitle Indian Harbour Beach to remission.
4. In the absence of ameliorating action on the part of the cities and accord, such as a franchise agreement providing for future rate structures and regulations, Indian Harbour Beach is empowered to expel and Melbourne is entitled to withdraw as concerns the water furnishing system of Melbourne to Indian Harbour Beach.
5. In the event the water utility service is discontinued, same shall be done under the trial court’s supervision. In the interest of public health, safety and welfare, it shall not be done precipitously but shall be accomplished within a reasonable length of time so as to not interrupt service to users, taking into account the amount of time required for Indian Harbour Beach to obtain a substitute source of water for its inhabitants. In the interim period Melbourne shall be empowered to determine water rates subject to the supervision of the trial court.
The judgment is affirmed in part and reversed in part and remanded for further proceedings consistent herewith.
Affirmed in part; reversed in part, and remanded.
CROSS, J., and MUSZYNSKI, B. C., Associate Judge, concur.

. It should be noted that the Florida Public Service Commission does not have jurisdiction over public utility systems operated by governmental agencies such as municipal corporations. Section 2, Ch. 70-604, § 367.02(7), F.S.1969, and § 367.16, F.S.1969. However, from the limited view afforded to ns by the facts of this case, we presume to wonder and recommend that it would be a desirable circumstance to give the Public Service Commission regulatory powers over municipal utilities in those situations where they serve customers, municipal, private or otherwise, which are located outside their particular city boundaries.

. Ordinance No. 99, in pertinent part 1) proscribes and regulates the rates charged Indian Harbour Beach by Melbourne for water, connection charges and deposits, 2) forbids the imposition of service and maintenance charges by Melbourne without the express and written consent of Indian Harbour Beach, 3) provides that “each and every rate or charge made or assessed contrary to this Ordinance” is a separate violation. Maximum penalties are $500 and/or sixty days.

. Ordinance No. 100 says in pertinent part 1) all meters, valves, pipes and fittings comprising the water and sewerage systems located within the City of Indian Harbour Beach shall be under the control of the City. It shall be unlawful to molest or disturb them in any way, 2) no person shall make any attachment or detachment on existing water or sewer utility fixtures, or remove, disconnect, adjust or damage in any way whatsoever any meter, box, pipe, valve, fitting or fixture attached to the water and sewer lines located within the City of Indian Harbour Beach without the express consent of the City, 3) the supplier of water, its agents or employees, shall be explicitly subjected to the provisions of this Ordinance.