Paul J. McDonough City Attorney Coral Springs
QUESTION:
Does s. 171.091, F. S., require by implication that a boundary article be contained in a municipal charter (as opposed to being provided only by ordinance)?
SUMMARY:
Florida law clearly requires that the boundaries of a municipality remain in its charter and that the charter be amended or revised whenever the boundaries are changed, with the amendment or revision filed with the Department of State. The Municipal Home Rule Powers Act by implication preserved as a part of the charters of the municipalities affected those charter boundary articles or provisions existing at the time of the enactment of that act.
Section 171.091, F. S., provides:
 Any change in the municipal boundaries through annexation or contraction shall revise the charter boundary article and shall be filed as a revision of the charter with the Department of State within 30 days. (Emphasis supplied.)
You also stated your opinion that the boundary article contained in the Coral Springs charter prior to enactment of Ch. 73-129, Laws of Florida, the Municipal Home Rule Powers Act, was converted into an ordinance by operation of s. 166.021(5), F. S. As to this aspect of your question, I would point out that s. 166.021(5), converted into ordinances `[a]ll existing special acts pertaining exclusively to the power or jurisdiction of a particular municipality except as otherwise provided in subsection (4) . . . .' (Emphasis supplied.) Section 166.021(4) preserved, in effect, those charter provisions affecting, among other matters, the `creation or existence' of a municipality. In State v. Town of Lake Placid, 147 So. 468, 471 (Fla. 1933), the Florida Supreme Court provided the following description of the basic elements of a municipality:
 Population is essential to the creation of a municipal corporation. The corporate body is composed of inhabitants within the territorial limits of the municipality . . . . The origin and history of the word `municipality' show beyond peradventure of a doubt that two elements are essential to its existence: a community of people, and the territory they occupy. (Emphasis supplied.)
A similar characterization of a municipal corporation is provided in 62 C.J.S. Municipal Corporations s. 9, p. 85:
 The term `municipal corporation' implies the organization of a certain geographical district under authority of law, and including within its jurisdiction and control a certain geographical area; territory is essential to, or an indispensable element of, the constitution and existence of a municipal corporation. (Emphasis supplied.)
In McQuillin The Law of Municipal Corporations, Vol. 2, s. 7.02, pp. 282-283, it is stated:
 It is, therefore, obvious that every municipal corporation must have its boundaries fixed, definite and certain, in order that they may be identified, and that all may know the exact scope or section of territory or geographical division embraced within the corporate limits, and over which the local corporation has jurisdiction. In fact, a description of the boundaries of a municipal corporation is said to be an essential part of its charter, and to be essential to its corporate existence. (Emphasis supplied.)
And, in McQuillin, id., at s. 9.03, p. 617, reference is again made to a boundary description as being a basic constituent of a municipal charter:
 Generally speaking, the municipal charter creates the body politic and corporate, contains the municipal powers and gives the form of municipal organization, locates the corporate boundaries and wards or other subdivisions, classifies and distributes the powers and duties of the various departments, boards and officers, and provides the manner in which the several powers shall be exercised. (Emphasis supplied.)
Therefore, I am of the opinion that the physical boundaries of a municipality clearly affect and are an inseparable element of the `creation or existence' of a municipality. Accordingly, neither the provisions of s. 166.021(5), F. S., which converted certain special acts into ordinances, nor the provisions of s. 166.021(4), which nullified and repealed certain charter provisions constituting limitations on a municipality's power, would have applied to or affected the boundary article contained in a municipality's charter at the time of enactment of the Municipal Home Rule Powers Act.
I am also of the opinion that s. 171.091, F. S., enacted subsequent to the Municipal Home Rule Powers Act, clearly reflects the Legislature's intent that a municipal charter boundary article, having been preserved in effect and as a part of the charter by s. 166.021(4), supra, is to remain in the charter. Whenever a statute is construed, `the legislative intent must be ascertained and effectuated.' City of St. Petersburg v. Siebold,48 So.2d 291, 293 (Fla. 1950). And, when such intent is ascertained, that intent is the controlling law. State v. Sheats,83 So. 508 (Fla. 1919). A fundamental rule of construction is that statutes should not be construed so as to bring about absurd or illogical results. City of St. Petersburg v. Siebold, supra, and Winter v. Playa del Sol, Inc., 353 So.2d 598 (4 D.C.A. Fla., 1977). It is also to be presumed that the Legislature did not intend to enact useless or meaningless legislation. Sharer v. Hotel Corporation of America, 144 So.2d 813 (Fla. 1962); Dickinson v. Davis, 224 So.2d 262 (Fla. 1969); City of Indian Harbour Beach v. City of Melbourne, 265 So.2d 422 (4 D.C.A. Fla., 1972); and Department of Revenue v. Merritt Square Corporation, 334 So.2d 351
(1 D.C.A. Fla., 1976). When these rules of construction are applied to the Legislature's directions in s. 171.091, that a boundary change brought about by annexation or contraction `shall revise the charter boundary article' (Emphasis supplied.), and `shall be filed as a revision of the charter with the Department of State' (Emphasis supplied.), s. 171.091 clearly evidences legislative intent and thus requires that the boundaries of a municipality be contained in its charter. To allow the boundaries to be set forth merely in an ordinance would render the provisions in s. 171.091 regarding revision of the charter useless and meaningless.
Also implying that the boundaries of a municipality are to be set forth in its charter is s. 166.031, F. S. Pursuant to s. 2(a) and (c), Art. VIII, State Const., it is clear that the fixing or changing of the boundaries of a municipality may be effected only by a special law establishing or reestablishing the municipality, or pursuant to annexation or contraction procedures provided in Ch. 171, F. S., or a valid special law. In recognition of this constitutional requirement, s. 166.031(1), providing for amendment of municipal charters by referendum, expressly refers to amendments to `any part or to all of said charter except that partdescribing the boundaries of such municipality.' (Emphasis supplied.) As is the case with the references to the charter boundary provisions in s. 171.091, supra, this reference to `that part [of the charter] describing the boundaries' would be meaningless, were it to be concluded that a municipality's boundaries are not required to be a part of its charter.
Therefore, while there is no provision in Ch. 166, F. S., or Ch. 171, F. S., expressly requiring a boundary article to be contained in a municipality's charter (as opposed to being established only in an ordinance), I am satisfied that s. 166.021(4) preserved in effect and as part of the various municipalities' charters those charter boundary articles or provisions existing at the time of enactment of the Municipal Home Rule Powers Act. I am also of the opinion that s. 171.091 clearly implies and requires that the boundaries of a municipality remain in its charter, and that the charter be amended or revised as prescribed by s. 171.091 and any such amendment or revision filed with the Department of State whenever the boundaries are changed pursuant to law.
Prepared by:
Jerald S. Price Assistant Attorney General