452 So.2d 1143 (1984)
Howard WILLIAMS, Appellant,
v.
The CITY OF MOUNT DORA, Florida, Appellee.
No. 83-1354.
District Court of Appeal of Florida, Fifth District.
July 19, 1984.
*1144 Christopher J. Smith, of Williams & Smith, Tavares, for appellant.
Harlow C. Middleton, Mount Dora, for appellee.
COWART, Judge.
This case presents the question of whether a public utility can require an applicant for service to pay a delinquent bill for service previously rendered to some other occupant or owner of a premises as a condition to continuing or reinstating service to the new applicant at the same premises.
Appellee, City of Mount Dora, Florida (municipal utility), operates a municipal electric utility in a certain geographic territory. In 1963 appellant, Howard Williams, and one Gordon Dake built a bowling alley near Mount Dora, Florida. Dake applied to the utility for electrical service and an account was opened in the name of Triangle Lanes, a fictitious or trade name, with no deposit being required. In 1964 appellant purchased Dake's interest in the bowling alley business. In 1971 the appellant leased the bowling alley for ten years to one Ernie McRee and in 1981 sold the business to McRee taking back a purchase money second mortgage. In September, 1982, in lieu of foreclosure, appellant accepted a quitclaim deed from McRee and reacquired possession of the bowling alley.
*1145 During the entire period from 1963 through September, 1982, the electric account with the utility remained in the name of Triangle Lanes, as originally opened.
On September 28, 1982, the utility notified appellant that the electric bill for August, 1982, for over $4,000, was delinquent and the utility intended to terminate electric service to the premises. Appellant had a commitment to a bowling league for 36 weeks and immediately contacted the utility and explained that he was not responsible for the delinquent electric bill because the unpaid service was provided to the premises and used by McRee before appellant reacquired the premises. However, on behalf of the utility, the city mayor and city administrator told appellant that by ordinance the city utility required any person acquiring property to pay the delinquent electric bill of any previous owner or occupant. The city administrator did suggest that in two similar cases the city council had granted "variances" to the ordinance and had excused successor owners from paying prior delinquent bills of predecessors. The administrator further stated that because he, the administrator, had no authority to grant a variance appellant would have to pay the delinquent bill to avoid an immediate termination of service. As an alternative the administrator proposed that "he [Williams] would agree to pay the deposit [of $3,600] and have the account turned over into his name or whatever name he wanted, and we would then request a variance from the city council at the next city council meeting and abide by that decision." To avoid termination appellant was required to sign the following document:
I, Mr. Howard Williams, agree to request a variance from City Council regarding the payment of an unpaid utility bill at Triangle Lanes, Account # 5 32 01 03 600.
If this variance is not provided by City Council I agree to pay the unpaid utility billing for this account in return for having power transferred to my name on this date.
The city council denied the variance, appellant paid the delinquent bill "under protest" and brought a declaratory judgment action to recover the sums paid. The trial court denied appellant recovery and he appeals.
The parties argue various issues under several theories but the trial court held appellant liable on the basis of the writing quoted above explaining that the utility "had every right in the world" to shut off the electric service because it was delinquent and that to avoid that result appellant "made a bargain and he lost in that bargain."
It is true, as the trial judge stated, that in the absence of statute or contractual agreement to the contrary, a public utility, such as the municipal utility in this case, like any private business furnishing regular services for periodic payment of monetary compensation, is entitled to terminate further service when the recipient breaches an agreement, express or implied, to pay for continued service. However, that is not the dispositive issue in this case.
The first issue is:
If a person is not legally liable for payment of a particular delinquent utility bill for services supplied to a certain premises, can the public utility legally refuse to supply service to that person at the same premises until the delinquent bill is paid?
We answer that question in the negative.[1]
Within the geographic territory a public utility has undertaken to serve and concerning which it has the exclusive legal right to provide necessary services, a public utility has a legal duty to provide services on an equal basis to all users who apply for service at reasonable and non-discriminatory rates and deposits. The providing *1146 of utility services by a municipality is a private or proprietary function in the exercise of which the municipality is subject to the same legal rules applicable to private corporations. The fact that a municipal utility may enact its rules and regulations as ordinances does not itself give it rights or duties with respect to users any different than those possessed by private utility companies. Because utility service is vested with a public interest, and the public utility by law is given an exclusive monopoly over services vital to the public, users are entitled to the equal protection provisions of the law and utility service must be provided and administered in all respects fairly, reasonably, and free from opposition and discrimination.[2] A public utility can attach no conditions to its duty to provide services which are unlawful, improper or personal to the user.
In the absence of an applicable and valid statute (and none has been cited or asserted in this case) liability for payment for utility services is based on usual contract law. While utility services may be provided at a particular premises it is a particular person, firm, corporation or other legal entity which is legally liable, on the basis of an express or implied contract, for payment of services rendered. To require an applicant for utility service to pay a debt for which the applicant is not legally liable is an impermissible condition.
The next issue is whether appellant was legally liable on any theory to the city for the utility service represented by the delinquent bill.
(1) If the utility had alleged and proved that the original account had been opened by appellant, he might be contractually liable for all service rendered to the premises without regard to who consumed, or benefitted from, the services provided. However, as noted above, the account was not opened by appellant but by Gordon Dake and then it was opened in a fictitious name. Because of the legal problem always created as to the entity, if any, legally liable on the account, it is never good business practice for a creditor to open or maintain an account receivable in a fictitious name.
(2) If the utility had alleged and proved that appellant and Dake were business partners and that Dake was acting on behalf of the partnership in opening the original utility account, appellant may have been liable on that basis.
(3) If the utility had alleged and proved that appellant had actually used, and benefitted from, the services supplied, his liability on the theory of implied contract (quantum meruit) might have been possible.
(4) If the utility had alleged and proved that, as part of the consideration for the reconveyance of the premises to appellant from McRee, appellant had agreed to assume and pay the electric bill in question, appellant may possibly have been liable to the city as a third party creditor beneficiary.
(5) As noted above, the trial court held appellant personally liable on the basis of the writing he was required to sign to prevent the utility from terminating electric service to the premises. By that agreement appellant agreed "to pay the unpaid utility billing for this account in return for having power transferred to my name on this date." (emphasis supplied) The utility never told appellant, as it should have, that even if service under the existing account was terminated for delinquency, the city, as a public utility, had the duty, upon application by appellant, to open a new account with appellant and to supply him services at the premises on the same basis as to rates and deposits as offered and supplied all other consumers. It is obvious from the facts that appellant was wrongfully coerced to execute the writing and to assume a responsibility for a delinquent account for which it was not shown appellant was legally liable, as a condition to the opening of a new account in his name and *1147 that the only consideration he received for his promise was that to which he was already lawfully entitled. Therefore his writing is not binding on him.
REVERSED AND REMANDED for entry of judgment in favor of appellant.
DAUKSCH, J., and COLEMAN, T.P., Associate Judge, concur.
NOTES
[1] See generally Annot., "Liability of Premises, or Their Owner or Occupant, for Electricity, Gas, or Water Charges Irrespective of Who is the User," 19 ALR 3d 1227 (1968); 64 Am.Jur.2d, Public Utilities, §§ 60, 67 (1972). Also see section 166.045, Florida Statutes (Ch. 84-292, Laws of Fla., effective June 19, 1984).
[2] See, e.g., Reid Development Corp. v. Parsippany-Troy Hills Twp., 10 N.J. 229, 89 A.2d 667 (1952).