## METCO DEVELOPMENT CORPORATION v CITY OF CLEARWATER, etc., et al.

Case No. 82-12598-20

Sixth Judicial Circuit, Pinellas County

October 30, 1986

### APPEARANCES OF COUNSEL

**John T. Allen** for county of Pinellas.

**M. A. Galbraith, Jr.** for city of Clearwater.

**Douglas J. Loeffler** for Metco.

### OPINION OF THE COURT

THOMAS E. PENICK, JR., Circuit Judge.

## FINAL JUDGMENT ON CROSS-CLAIM OF PINELLAS COUNTY AGAINST CROSS-DEFENDANT, CITY OF CLEARWATER

THIS CAUSE is before the Court for determination after hearing on April 16, 1986, on Pinellas County's cross-claim against the City of Clearwater, seeking a Declaratory Judgment and Injunctive Relief. The case originated on the complaint of Plaintiff, METCO DEVELOP-MENT CORP., against Defendants, CITY OF CLEARWATER, PINELLAS COUNTY, and the DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, STATE OF FLORIDA. The plaintiff claimed that it had land in the unincorporated area of Pinellas County with water lines in front of it from the City of Clearwater, and that the City of Clearwater had refused to give the Plaintiff, METCO DEVELOPMENT CORP., water unless it annexed its property into the corporate limits of the City of Clearwater. In sum, the complaint requests the Court to determine whether the City of Clearwater or Pinellas County should be required to grant water service to the plaintiff. The Defendant, HEALTH AND REHABILITATIVE SER-VICES, STATE OF FLORIDA, is sued because it has found problems with the well water that plaintiff is using pending a hookup to one of the governmental entities water systems whereby Health and Rehabili-tative Services has informed the plaintiff that it must test its well quarterly for the arsenic content of its water. Plaintiff complains that the testing requirements are unreasonable.

For convenience in this opinion the parties will be referred to as follows: Plaintiff, METCO DEVELOPMENT CORP., shall be referred to as "PLAINTIFF" or "METCO"; the Cross-Plaintiff, PINELLAS COUNTY, shall be referred to as the "COUNTY"; the Cross-Defen-dant, CITY OF CLEARWATER, shall be referred to as the "CITY".

After extensive testimony, and after hearing argument by counsel for the respective parties on the law and the facts the Court has concluded that the City of Clearwater is required to service Metco without requiring Metco to annex into the City, and thus the City's policy of requiring annexation as a condition to obtaining water services is improper and illegal and should be enjoined. The Court makes the following findings of fact and law based on the evidence and the Memorandum as hereinafter explained in this opinion.

Metco owns property which is located in the City's "water service area". This water service area is designated both in an Agreement between the County and the City dated March 19, 1976, and by Resolution of the County Commission on September 16, 1975. Metco's

46

property is bounded on the north by Drew Street and on the west by Mercury Avenue. Two water lines now exist in looped fashion around the Metco property. One 8 inch line runs the length of Drew Street right in front of Metco's property while a 6 inch line traverses Metco's western boundary. Two fire hydrants exist, one on the southeast corner of the Metco property while the other one is situated near the rear of the property on Mercury Avenue. These water hydrants were paid for by Metco and were required by the City. Additionally, the water taps and meters for water service by the City already exists on Metco's property. Thus, the only thing that is required to obtain City water service by Metco is to have a plumber make the appropriate connection on Metco's property and water service will then commence to the sixteen (16) apartments on the southern half of the Metco property. At the time of trial, and apparently since their construction, the northern half of Metco's property consisting of three multi-store complexes in an "1" shape have been served by the City. Service is rendered to Metco by the City with no requirement of annexation.

The controversy seems to have arisen during 1977 or 1978 when Metco considered annexing into the City. The President of Metco, Mr. Metts, testified that on one occasion his application for annexation had been turned down by the City. He stated that he later applied again for annexation and since the City and the County's land use plans conflicted the application was withdrawn. It seems that the City had the practice of zoning the property requested to be annexed into the City and annexing the property at the same time. In Metco's case the City wanted to zone the property on the southern portion of Metco's property for only ten units per acre while Metco already had plans drawn for sixteen units under the County's applicable zoning. The City apparently refused to accept the zoning of the City and required an agreement with the County with a waiver of the two year moratorium on zoning laws under as a condition of annexation. Since Metco was unwilling to give up the zoning apparently the second attempt at annexation failed.

The evidence is clear that as a matter of fact the City is a quasi-monopoly utility having undertaken to service the entire territory designated by the Pinellas County Commission in its Resolution as the City's water service area. The same water service area was agreed to in the contract between the City and the County of March 19, 1976.

This agreement in pertinent part provides that the County will supply the City 10 million gallons of water per day (MGD) for "use and for redistribution in its water service area". The water service area is designated on a map attached as an exhibit to the contract. In

**47**

addition, the contract provided that "all parties agree that the area described in Exhibit A [water service area] herein will be the furthest extension of the retail water service by the City, regardless of future annexation by the City." Most importantly the contract provided "It is the intent of both parties by adopting and obtaining these service areas to avoid duplication of capital investment and maintenance costs and to render water service to the public as efficiently as possible". Provision is also made for the City to acquire, by purchase, any of the County's water system which the City finds feasible after annexation. Provision is made in the agreement for the County to maintain any lines that are not feasible to be purchased by the City in the City's water service area. The Court construes the contract as providing for disposition of the *existing* water lines of the County at the time of the execution of the contract, and that the provisions in paragraph 10 do not apply to *new* propert which has not been serviced by the County but lies within the City's water service area. Under such construction the contract complies and comports with the established case law on public utilities which are vested in the public interest.

The Board of County Commissioners of Pinellas County, on September 16, 1975, under and pursuant to the authority of the County to designate water service areas under § 29442, Special Acts of Florida, 1953,[1] did establish the City's water service area which includes the Metco property. Therefore, under such designation, and pursuant to law, the City was the exclusive water utility which was permitted to service the geographic area designated by the Commission in its resolution and in the agreement between the County and City. The Court acknowledges that the City and County, or any other municipality might agree to waive their rights in a service area but such a waiver would have to be reached by a *mutual* not unilateral agreement between the competing water systems. The Court notes that the Fifteenth Defense in the City's answer contends that it is a "quasi-monopoly". As stated, as a matter of-fact and law, the Court finds the City to be a monopoly or public utility who has the sole right to serve customers both in the incorporated City limits of Clearwater and the unincorporated areas of the County. Service areas are not consistent with City municipal limits.[2]

---

[1] *The City of Safety Harbor v. Pinellas County*, 374 So.2d 104 (Fla. 2d DCA 1979) and the Decision by Judge Fogle of May 16, 1978.

[2] *City of Pinellas Park v. Cross-State Utilities Co.*, 205 So.2d 704 (Fla. 2d DCA 1968); *Pinellas County v. City of Safety Harbor*, Opinion filed May 16, 1978 by Judge Fogle; *The City of Safety Harbor v. Pinellas County*, 374 So.2d 104 (Fla. 2d DCA 1979).

In making its decision the Court has three choices. The Court can declare that Metco is not entitled to any water service from either the City or County. The second alternative is to require the City to serve Metco without condition of annexation since Metco is in the City service area.

The first alternative in view of the evidence in this case of the finding of arsenic in the well water which services the apartment units in the southern portion of the Metco property and testimony from the County that well water is susceptible to bacterial infestation which might escape the scrutiny of any private company who periodically would attempt to maintain and chlorinate such a well, compels the Court to the belief that under the facts of this case and law it is not feasible to rule that Metco is not entitled to water service at all from either the City or County.

The uncontested fact is that the County lines are approximately one-third a mile away from Metco's property and in order to service the Metco property the County would have to run a line from its transmission main to the property at a cost to Metco of approximately $29,290.00. This line would be a line which would not be "looped" and thus would require flushing periodically every one or two weeks at a cost to the County of $1,678.00 per year. These funds would have to be paid by Pinellas County water users in general and could not be required to be paid by Metco. While there are many customers in the Pinellas County water system who could defray such a cost which would impact the customers only in a very small way it is obvious to the Court that if the precedent were established whereby the County would have to place a single unlooped line into other municipal water service areas in the County that the cost of flushing would soon amount to substantial proportions thereby substantially impacting the water users in the County. The County has also indicated that, in reality unless ordered by the Court, it will refuse to service Metco because of the extraordinary cost involved and because of the Water Director's policy of not tapping into transmission lines for the purpose of serving single customers. The Court does find that the requirement of paying the substantial cost of putting in the line by Metco is unreasonable and unnecessary.

The Court specifically finds that there would be substantial duplication of services if the County were required to run a line from its transmission main to the Metco property since the line would have to run parallel and just a few feet from a water line which is looped by the City along Drew Street. Some type of flushing procedure by way of

49

hydrant or blow-off valve would have to be used to periodically flush the County's line. On the other hand the City's lines which are "looped" would continue to mix the chlorine in the water so that the water will not become stagnant or "black", as would be the case if the County's single line were required to be placed along Drew Street. The Court finds that not only would there be duplication of services but that the supply by Pinellas County to Metco of water would not be feasible because the lines would not be "looped" and would require consistent periodic care.

The City defends against the third alternative of requiring the City to service Metco by stating to the Court that there is no law or contractual agreement, or decisional precedent which *requires* the City to service Metco. The Court disagrees with this contention for many reasons.

The evidence shows that the City has undertaken to service the geographic territory of the City's service area. The fact that this service area is exclusive is borne out by the fact that the City contends that because it will *consent* to Pinellas County's service of Metco of the property it does not come within the substantial precedent[3] which would require the City to service Metco. Since the City would have to give its consent to the County it necessarily follows that the City has the exclusive legal right to provide water service in its water service area and the right to bar any other governmental entity attempting to serve water in the service area. Under this finding alone the City would be required to serve Metco. In *Williams v. The City of Mount Dora*, 452 So.2d 1143 (Fla. 5th DCA 1984) the District Court held:

> *Within the geographic territory a public utility has undertaken to serve and concerning which it has the exclusive legal right to provide necessary services, a public utility has a legal duty to provide services on an equal basis to all users who apply for service at reasonable and non-discriminatory rates and deposits.* The providing of utility services by a municipality is a private or proprietary function in the same legal rules applicable to private corporations. The fact that a municipal utility may enact its rules and regulations as ordinances does not itself give its rights or duties with respect to users any different than those possessed by private utility companies.

---

[3] *Williams v. The City of Mount Dora*, 452 So.2d 1143 (Fla. 5th DCA 1984); *Pinellas County v. The City of Safety Harbor*, Case No. 77-376-7 (Pinellas County Cir. Ct. May 16, 1978); *The City of Safety Harbor v. Pinellas County*, 374 So.2d 104 (Fla. 2d DCA 1979); *City of Pinellas Park v. Cross-State Utilities Co.*, 205 So.2d 704 (Fla. 2d DCA 1968); *Edris v. Sebring Utilities Commission* 327 So.2d 585 (Fla. 2d DCA 1970).

*Because utility service is vested with a public interest, and the public utility by law is given an exclusive monopoly over services vital to the public, users are entitled to the equal protection provisions of the law and utility service must be provided and administered in all respects fairly, reasonably, and free from opposition and discrimination.* A public utility can attach no conditions to its duty to provide services which are unlawful, improper or personal to the user. [Emphasis supplied] [452 So.2d at 1145-1146]

The Court finds the *Williams* decision, *supra*, to squarely apply in this case. The City has assumed to provide water service to a geographic territory, is a public utility, and has the exclusive legal right to provide water service in the water service area. Under such circumstances the City has a *duty* to provide water service to Metco on a reasonable and non-discriminatory basis. The evidence indicates that there are substantial number of areas in the City's water service area which are in the County or unincorporated area which are being served water without being required to annex. The City contends that such customers only exist because they were being served prior to the initiation by the City of its annexation or no water policy. The Court finds this classification to be insufficient and unreasonable. The City should be required to treat all of its customers in its service area on the same basis, and since it is serving customers in unincorporated areas without the requirement of annexation it must treat Metco in the same fashion. Therefore, applying the rule established in *Williams* the Court finds that the City is required to serve Metco without the condition of annexation.

The Court finds the cases of *Pinellas County v. The City of Safety Harbor*, Case No. 77-376-7 (Pinellas County Cir. Ct. May 16, 1978) aff.; *The City of Safety Harbor v. Pinellas County*, 374 So.2d 104 (Fla. 2d DCA 1979); *City of Pinellas Park v. Cross-State Utilities Co.*, 205 So.2d 704 (Fla. 2d DCA 1968), and *Edris v. Sebring Utilities Commission*, 237 So.2d 585 (Fla. 2d DCA 1970) to be controlling.

In *Edris* the District Court held that the general rule is that a public utility corporation cannot refuse to render service which it is authorized by its charter or by law to furnish because of some collateral matter not related to that service. The Court finds that annexation is a collateral matter not related to water service. Therefore, since the City is authorized by its charter, and required by law to furnish water service it may not refuse to render such service conditioned upon annexation.

This, of course, does not mean that any one who obtains service

**51**

from the City in its water service area is not required to pay all normal and regular costs assessed other water users under similar conditions, including impact fees and "tap-in fees". *See c.f.-Contractors and Builders Assn. of Pinellas County v. City of Dunedin,* 329 So.2d 314 (Fla. 1976). By this opinion the Court rules that all reasonable and regular costs appurtenant to obtaining water service, including impact fees, must be paid by water users in the unincorporated areas of the City water service areas.

Contractually the City has also agreed to serve the entire water service area which includes Metco's property. The Court construes the contract and the intent of the parties to follow the established law required of public utilities and quasi-monopolies in providing water service to their customers in the water service area at the lowest possible cost with the most efficiency. In fact the parties have stated in a provision in the contract that it was their intent by executing the agreement to avoid a duplication of capital investment and maintenance cost and to provide water service to the public as efficiently as possible. It is obvious that requiring the County to run a line along Drew Street to service Metco would constitute duplication of capital investment and maintenance cost and would not constitute an efficient service of water to the public.

The Court finds persuasive the ruling by Judge Fogle in the case of *The city of Safety Harbor v. Pinellas County,* 374 So.2d 104 (Fla. 2d DCA 1979) (Affirmed without opinion) as follows:

All of the legal precedent and statutes cited to the Court by both parties seem to be an extension of the public policy which prohibits duplication of facilities. Universally, competition within the same area by public utilities in the field of water distribution has been determined to be deleterious and not in the public interest. This public policy is said to be designed to protect against ruinous competition, to promote efficient service and to eliminate waste attendant to unnecessary duplication of facilities. This policy prevents overreaching and restrains cut-throat competition upon the theory that it is destructive and the public must pay for that destruction. Usually, when a utility wishes to service an area, it must show the need for a new service system and that there will be an absence of wasteful duplication of facilities. It is well settled that Courts will generally deny utilities the right to duplicate services.

Following this precedent the Court concludes that the City must service Metco. To rule otherwise would violate each of the principles established in the above-cited decision. The Court is persuaded that the

52

general law, throughout not only Florida but the United States, is entirely consistent with these precepts.

The Court in *The City of Safety Harbor v. Pinellas County, supra,* stated that Chapter 29442, Special Acts of Florida 1953, gives the County the right to designate service areas. This was obviously the opinion of the District Court in affirming the decision without opinion. Based upon this factor alone, and the uncontradicted evidence before the Court that a resolution of the Pinellas County Commission has designated the area in question to be the service area of the City, it necessarily follows that the City is required to serve Metco without requiring annexation.

Finally, the County contends that to permit the City to enforce its "policy" of not providing water service without annexation violates the spirit and intent of Chapter 171, Fla. Stat., which provides the *sole* means of annexation. The Court agrees. The annexation law is to be strictly construed and no annexation procedure, other than that which is provided by the Legislature, may be utilized to require annexation of territory by a municipality. *See Town of Magnolia Park v. Hoffman,* 118 SO.2d 585 (Fla. 2d DCA 1960).

Under § 171.0413, Fla. Stat., a City may involuntarily annex an area into its municipality. Likewise, under § 171.044, Fla. Stat., a property owner may "voluntarily" annex his land into a municipality. No statute authorizes a municipality to achieve annexation by refusing to grant utility service in its utility service area. The Court finds that under such conditions any such owner would be under governmental duress and would therefore not be voluntarily annexing into a municipality. *Scutti v. State Road Department,* 220 So.2d 628 (Fla. 4th DCA 1969); *City of Miami v. Kory,* 394 So.2d 494 (Fla. 3d DCA 1981); *c.f. Northridge General Hospital, Inc. v. City of Oakland Park,* 374 So.2d 461 (Fla. 1979). Therefore, the Court finds that the City has improperly embarked upon an annexation procedure not authorized by the Florida Legislature or the laws of Florida.

The City relies upon an opinion of the Attorney General dated January 16, 1986 and the cases of *State Insurance Co. v. City of Boca Raton,* 387 So.2d 478 (Fla. 4th DCA 1980) and *City of Indian Harbor Beach v. City of Melbourne,* 265 So.2d 422 (Fla. 4th DCA 1972). The Court finds that the opinion of the Attorney General and the two District Court decisions do not apply to the case under consideration.

The Attorney General's opinion does not refer to the controlling precedent relied upon by the Court in this cause. In fact the Attorney General's opinion states that he is unaware of any charter, statutory

provision or any contractual agreement which would require a City to serve utilities outside of its municipal boundaries. It would appear that the Attorney General was not aware of these decisions and Pinellas County's Special Act.

The case of *Allstate Insurance Co. v. City of Boca Raton,* 387 So.2d 478 (Fla. 4th DCA 1980) does not apply because the Court specifically limited that decision to the plan of development in question and recognized the line of cases relied upon by this Court exemplified by the *Edris* decision.

*City of Indian Harbor Beach v. City of Melbourne,* 265 So.2d 422 (Fla. 4th DCA 1972) is cited by the City for the general rule that a municipality will not be required to serve utilities outside of its municipal boundaries. With that principle the Court agrees; however, such is not the case here. As stated, the City is required both under law and by contract to service the service area in which Metco is located. These factors distinguish the case under consideration from the decision in *City of Indian Harbor Beach v. City of Melbourne.*

Since the Court has found that the City is required to service Metco water without the condition of annexation because the City has undertaken to serve the public in a specific geographic territory in which it had an exclusive legal right to provide necessary services which the City has undertaken, the City has contractually agreed by implication to serve all customers in its designated water service area, and because the Pinellas County Commission has designated the area in question as the water service area of the City of Clearwater, and because the City has violated the rule of law that requires a municipality to service water customers outside the municipal boundaries without a condition of annexation which is not so interlocked that neither can be effective without the other, the Court finds for the Cross-Plaintiff, PINELLAS COUNTY, and against the Cross-Defendant, CITY OF CLEARWATER.

Therefore, the rights, privileges and immunities between the City of Clearwater and Pinellas County are declared as follows:

1. The City of Clearwater has the exclusive right to service all of the water customers in its designated water service area absent any joint agreement between any other water supplier;

2. The City of Clearwater is required to serve water to all customers in the unincorporated areas of Pinellas County in its water service area, including Metco Development Corporation, without conditioning such service upon annexation or by contract provisioned upon annexation should the property become eligible to be annexed.

54

Therefore, it is,

ORDERED AND ADJUDGED as follows:

1. The City of Clearwater be and the same is hereby permanently restrained and enjoined from requiring annexation of any unincorporated property in its water service area as a condition to supplying water service in its designated water service area, either as an immediate annexation or under any contract for future annexation;

2. The rights, privileges and immunities of the City of Clearwater and Pinellas County under the facts and circumstances of this case be and the same are hereby declared to be binding between the parties as stated in this opinion;

3. That the Cross-Plaintiff as the prevailing party recover its costs of this action from the Cross-Defendant, CITY OF CLEARWATER. The Court retains jurisdiction for the purpose of assessment of such costs;

4. The Court retains jurisdiction over the subject matter and the parties to this cause for the purpose of enforcement of its injunctive relief granted in this cause and all other executory provisions of this Court's Order.

DONE AND ORDERED in Clearwater, Pinellas County, Florida, this 30th day of October, 1986.