Mr. Richard R. Michelson City Attorney City of Lauderhill Suite 200 7101 West McNab Road Tamarac, Florida 33321
Dear Mr. Michelson:
You have asked on behalf of the City of Lauderhill substantially the following question:
Does s. 180.135, F.S., prevent a municipality from accepting applications for utilities services only from the owners of rental property, excluding applications from tenants of such property?
In sum:
While s. 180.135, F.S., on its face, does not contain a prohibition against municipalities restricting utility services to rental units only when the owner of the rental unit applies for the services, such action by a municipality would appear questionable in circumventing the purpose for the statute's enactment.
Section 180.135(1)(a), F.S., provides:
Any other provision of law to the contrary notwithstanding, no municipality may refuse services or discontinue utility, water, or sewer services to the owner of any rental unit or to a tenant or prospective tenant of such rental unit for nonpayment of service charges incurred by a former occupant of the rental unit; any such unpaid service charges incurred by a former occupant will not be the basis for any lien against the rental property or legal action against the present tenant or owner to recover such charges except to the extent that the present tenant or owner has benefited directly from the service provided to the former occupant. Thus, in s. 180.135, F.S., the Legislature has limited a municipality's authority to refuse to provide or to discontinue utility services to the owners, tenants or prospective tenants of rental property, based upon the nonpayment for services by a previous tenant. Section 180.135, F.S., on its face, does not address procedures or limitations which a municipality may impose upon applications for utility services to rental units, regardless of the previous tenants' payment history.
It should be noted, however, that s. 180.135, F.S.,[1] was created in order to eliminate any liability of rental property owners who have tenants who default on service payments and to assure utility service to new tenants who move into a rental unit which was formerly occupied by a tenant in default.[2] The legislative history of s. 180.135, F.S., reflects that rental property owners would benefit from passage of the legislation in that they historically were forced to pay delinquent utility charges of former tenants in order to avoid imposition of a lien[3] or in order to have the utility services restored for a new tenant.[4]
Section 180.135, F.S., was amended during the 1988 Legislative Session[5] in response to some municipal utilities requiring property owners to sign a contract agreeing to be liable for a tenant's utility bill as a precondition to providing services to a rental unit.[6] The amendments were to "clarify that when a tenant makes arrangements for utility services with a municipal utility, the landlord or a subsequent tenant may not be held responsible for payment of the charges incurred" and to "close loopholes . . . used to force some property owners to pay for charges which they did not incur and over which they ha[ve] no control."[7]
It would appear that one of the primary reasons for the creation and clarification of s. 180.135, F.S., is to prevent the owner of rental property from being forced to assume liability for payment of services provided to tenants of the rental unit. Thus, to implement a plan as you propose would subvert the purpose for which s. 180.135, F.S., was passed and would improperly result in allowing a municipality to do indirectly what it is statutorily prohibited from doing directly.[8]
In Williams v. City of Mount Dora,[9] the opinion addressed whether a public utility could require an applicant for service to pay a delinquent bill for service previously rendered to some other occupant or owner of a premises as a condition to continuing or reinstating service to the new applicant at the same premises. In finding that refusal of service could not be used to coerce a new applicant to pay a delinquent bill, the court stated:
Within the geographic territory a public utility has undertaken to serve and concerning which it has the exclusive legal right to provide necessary services, a public utility has a legal duty to provide services on an equal basis to all users who apply for service at reasonable and non-discriminatory rates and deposits. The providing of utility services by a municipality is a private or proprietary function in the exercise of which the municipality is subject to the same legal rules applicable to private corporations. The fact that a municipal utility may enact its rules and regulations as ordinances does not itself give it rights or duties with respect to users any different than those possessed by private utility companies. Because utility service is vested with a public interest, and the public utility by law is given an exclusive monopoly over services vital to the public, users are entitled to the equal protection provisions of the law and utility service must be provided and administered in all respects fairly, reasonably, and free from opposition and discrimination. A public utility can attach no conditions to its duty to provide services which are unlawful, improper or personal to the user.[10]
Thus, the Williams court acknowledged that municipalities providing electricity have a monopoly over services vital to the public and found that users of municipal utilities must be treated fairly, reasonably and in a manner free from discrimination. Applying general principles of constitutional equal protection to such a situation would mean that all utility customers similarly situated, such as residential electrical customers, would be treated alike.[11]
Accordingly, it is my opinion that, while s. 180.135, F.S., on its face, does not address whether a municipality may restrict applications for utility services to owners of property, such restrictions would not be advisable in that they would subvert the purpose of the statute. Any constitutional questions which might arise from such action would have to be addressed by a court of competent jurisdiction.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 1, Ch. 84-292, Laws of Florida, created s. 166.045, F.S., as part of the Municipal Home Rule Powers Act; s. 166.045, F.S., was renumbered as s. 180.135, F.S. (1984 Supp.), by the Division of Statutory Revision.
[2] See, Senate Staff Analysis, Committee Substitute for Senate Bill 1057, Economic, Consumer and Community Affairs Committee, July 3, 1984.
[3] Section 159.17, F.S., provides that any municipality issuing revenue bonds pursuant to Ch. 159, F.S., shall have a lien on all lands or premises served by any water system, sewer system or gas system for all service charges for such facilities until paid. In AGO 85-70, this office concluded that s. 180.135, F.S., operates prospectively and does not affect liens imposed prior to its effective date or liens resulting from nonpayment of services which were financed by revenue bonds issued prior to the effective date of s. 180.135, F.S., pursuant to s. 159.17, F.S.
[4] See, footnote 2, supra.
[5] See, s. 1, Ch. 88-332, Laws of Florida.
[6] See, House of Representatives Committee on Regulated Industries and Licensing, Staff Analysis, House Bill 506, July 8 1988.
[7] See, Staff Analysis, footnote 6, supra.
[8] See, Green v. Galvin, 114 So.2d 187, 189 (1 D.C.A. Fla., 1959) (public official cannot do indirectly that which he is prohibited from doing directly).
[9] 452 So.2d 1143 (5 D.C.A. Fla., 1984).
[10] Id. at 1145-1146.
[11] See, Burstyn v. City of Miami Beach, 663 F. Supp. 528
(S.D.Fla., 1987).